*669 OPINION.
TuRNer:
Davis contends that he is entitled to a deduction for 1936 of $2,000 as a debt due from Holmes to him, which debt he ascertained to be worthless and charged off in that year. The respondent claims that the payment to Holmes did not constitute a loan but represented money advanced to him for use in a stock venture in which Holmes and Davis were to share the profits and that the transaction was not a loan by Davis to Holmes. There is also some argument that on the evidence the advance was made not by Davis but by the M. T. Davis Co.
In our opinion, the evidence definitely shows that the money advanced, whether or not it was in the nature of a loan, was advanced by Davis and not by the corporation, and no extended discussion on that point is required. With respect to the character of the advance the record is not so clear. Davis in his testimony refers to it as a loan by him to Holmes and that characterization of the advance receives some support from the letter written by Mrs. Holmes to Davis under, date of August 21, 1936. After carefully following the testimony of Davis while he was on the stand and later reviewing the transcript thereof and the exhibits introduced at the hearing, we are convinced that Holmes and Davis did not regard the advance as a loan at the time it was made and that the money was not repayable by Holmes in any event but only upon successful termination of the venture. The agreement between them was not reduced to writing and the matter of losses was not discussed. The record is silent as to whether or not Holmes personally was putting cash into *670 the venture and, if so, how much. The transaction with Holmes was summed up by Davis in the statement, “I wouldn’t charge him any interest in view of the fact that he would give me half the profits of his dealings”, and later, “I just gave him the $4,000 and the time that he was through with his dealings he would pay me the note. It wasn’t a note. He would pay me the loan.” The money was advanced in February 1934. It was not until some time in 1935 that Holmes was transferred to Tifton, Georgia, after which, according to the recollection of Davis, he made one trip back to Cleveland. At no time did Davis ask Holmes for a return of the money and he gives us no information as to whether prior to the receipt of the letter from Mrs. Holmes on August 21, 1936, he knew of the result or outcome of the stock venture, or, if so, when he obtained the information. In one part of his testimony he stated that at no time either while Holmes remained in Cleveland or after he moved to Tifton, Georgia, did he ever discuss with him the matter of the $2,000. At another place, in response to the question, “Did you keep track of that investment?”, his answer was, “The bookkeeper does”, and then in response to the question whether he made any inquiry as to whether the investment was producing income his answer was, “No.”
It is true that Davis in the course of his testimony characterized the advance to Holmes as a loan and that Mrs. Davis in her letter of August 21,1936, referred to the matter as a borrowing of money from Davis stating, “I do not know what his part of the loss or profit was, but I want to straighten that up too.” This letter was written, however, after she had made an inquiry of Davis as to the value of certain insurance policies and had received a reply from Loewenthal advising her that he had been retained by Davis to look into the matter for her free of any expense. In our opinion, the references made to the matter by Mrs. Holmes in her letter are not conclusive of the character of the transaction between Davis and Holmes, and, considering the facts as revealed by the testimony of Davis, we think it not unlikely that Mrs. Holmes, knowing the money used in the venture or a part of it came from Davis, assumed it was received as a loan without really knowing the terms of the agreement between her husband and Davis, or whether Holmes in fact owed Davis anything. Davis’ explanation of the transaction, his attitude toward Holmes, and his conduct with respect to the transaction are much more revealing and, regardless of the use in his testimony of the term “loan”, indicate to us that there was no intention as between him and Holmes that the money should be repaid by Holmes in any event, but that its repayment was dependent upon the outcome of *671 the venture, in which case and. at which time he should receive a return of his money and one-half of the profits. Davis testified that nothing was said about losses and that he understood he was not “to receive any losses.” These statements, in our opinion, are of no particular moment. Most likely Davis and Holmes were like most people indulging in a speculative venture; they were too engrossed in the contemplation of hoped-for profits to consider the possibility of losses. The transaction was, in our opinion, not a loan by Davis to Holmes but the joining with Holmes in a speculative venture with the hope of profits. Considering the facts of record with respect to the origin of the transaction, its terms, the possibility of repayment, and the conduct of the parties with respect thereto up to the time of Holmes’ death, we are convinced that the idea of classifying the transaction as a loan was in the nature of an afterthought suggested to Davis by Mrs. Holmes’ letter of August 21. It is our opinion and we find that the relationship of debtor-creditor did not exist between Davis and Holmes, and, there being no debt, the first issue is determined for the respondent. Davis may have sustained a loss in some year on the transaction, but he is not claiming a loss deduction here, and even if he were the record does not contain evidence establishing the year in which the loss was sustained.
The sole question remaining is whether that portion of the compromise amounts agreed to and paid by Davis and the corporation for prior tax years attributable to interest on the tax for such prior years was interest within the meaning of section 23 (b) of the Eevenue Act of 1936 and therefore deductible by them. The petitioners contend that said amounts were claimed by the Government to be due from them as interest and were paid by them as interest and are therefore deductible as such, while the respondent rests his case on the contention that the amount agreed to and paid was a lump sum compromise of liability for income tax, penalty, and interest and in mitigation of criminal liability for evasion of income taxes and that no portion thereof was interest within the meaning of the statute.
A compromise is a contract. Although compromises are favored in the law, nevertheless a compromise contract is a proper subject for judicial consideration as to its meaning, validity, or consideration, in the light of the language used and in the light of the circumstances surrounding the making of it. Big Diamond Mills Co. v. United States, 51 Fed. (2d) 721; Colorado Milling & Elevator Co. v. Howbert, 57 Fed. (2d) 769. As was said in Insurance Co. v. Dutcher, 95 U. S. 269: “The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as anything else. There *672 is no surer way to find out what the parties meant, than to see what they have done.” Examining the compromise contract here involved in the light of the foregoing, we find that the petitioners in their last compromise offer recited that they had been charged with an attempt to evade and failure to meet income taxes, together with penalty and interest, for the years and in the amounts set out therein. The offer further recited that to secure their respective releases for said years “from all civil and criminal liability, resulting from the violation or failure for the years mentioned, the sum of $104,131.96 is hereby tendered voluntarily with the request that it be accepted in compromise of the said liabilities.” The agreement further recited that Davis would enter a plea of guilty to count two of indictment No. 15780 and abide by the sentence of the court. In the Attorney General’s acceptance of the offer, he stated: “Under this offer taxpayers agree to pay the sum of $104,131.96 in settlement of all liability with respect to income taxes, penalties and interest of the corporation for the years 1924 to 1934 inclusive, and of the individual for the years 1925 to 1934 inclusive.” In the statement prepared by the Attorney General’s office and submitted to the court by the district attorney after Davis had pleaded guilty, the $104,131.96 is described as “representing tire full amount of income taxes found to be due with the 50 per cent penalties and interest for all years.” The statement also contained the following: “Of the amount agreed to be paid, $47,006.61 represents taxes, $23,621.57 represents 50 per cent ad valorem penalties, and $33,503.78 represents- interest on the taxes.” In the light of the foregoing, we think it is apparent that the petitioners and the Attorney General regarded the payment of the $104,131.96 as constituting the payment of the taxes, penalties, and interest that were claimed by the Government to be due from the petitioners.
Our conclusion is that, regardless of any additional purpose served, payment of the $104,131.96 did represent and effect the payment of the income taxes, penalties, and interest claimed by the Government to be owing. The parties having so regarded the payment, we shall do likewise here. Accordingly we hold that the amounts of $9,066.63 and $24,437.15 included in the $104,131.96 represented interest on the taxes of Davis and the corporation, respectively, for the years there involved. Interest paid on Federal taxes is interest on a debt and is deductible from gross income in computing income taxes. United States v. Jaffray, 97 Fed. (2d) 488; affd., 306 U. S. 276. On this issue the contention of the respondent is therefore rejected.

Decision will be entered under Bule SO.