**EAGLE ASBESTOS & PACKING CO., Inc.**

v.

**The UNITED STATES.**

**No. 443–61.**

United States Court of Claims.
July 16, 1965.

Donald L. Mooers, Washington, D. C., for plaintiff, Robert Ash, Washington, D. C., attorney of record. Carl F. Bauersfeld, and Ash, Bauersfeld & Burton, Washington, D. C., of counsel.

Edward B. Greensfelder, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Lyle M. Turner, C. Moxley Featherston, and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

Plaintiff in this action seeks recovery from the United States for certain income taxes paid for the fiscal years 1956, 1957 and 1958. The basis of plaintiff's action is that the Commissioner of Internal Revenue erroneously added the amount of $68,130.37 to plaintiff's income for the year 1951. The Commissioner's action was based on his determination that plaintiff had interest income for said year which resulted from a compromise and settlement of the Federal income and excess profits and renegotiation liability of plaintiff for the years 1943, 1944 and 1945. By increasing plaintiff's

income for the year 1951 in the amount of $68,130.37, plaintiff's net operating loss deduction for the fiscal years 1956, 1957 and 1958 was thereby reduced. It is this action that plaintiff says was erroneous. The action by the defendant resulted in deficiencies in principal of tax for fiscal years ended October 31, 1956, 1957 and 1958, respectively.

Plaintiff paid the alleged deficiencies in principal of tax with interest thereon and timely filed claims for refund of income taxes and interest paid. No action was taken by the Commissioner of Internal Revenue with respect to the claims for refund. This suit was brought by plaintiff to recover the amount paid plus interest thereon.

The facts are undisputed and briefly are as follows:

Plaintiff, Eagle Asbestos & Packing Co., Inc., is a corporation organized and existing by virtue of the laws of the State of Louisiana. Its principal office is located at 2500 Earhart Boulevard, New Orleans, Louisiana. It is engaged in the business of selling asbestos and insulation products.

On May 12, 1948, an agreement was entered into by the plaintiff and the Internal Revenue Service through the office of the Technical Staff, Southwestern Division. This agreement provided that income and excess profits taxes for the years ended December 31, 1943, 1944 and 1945 were finally determined as being $257,949.45, plus interest as provided by law. On April 27, 1948, the Tax Court of the United States rendered a judgment whereby renegotiation liability owed by plaintiff for the years ended December 31, 1943, 1944 and 1945

was finally determined to be in the amount of $146,439.47, plus interest at the rate of six percent per annum from March 27, 1947.

The plaintiff corporation filed its income tax returns on the accrual basis. Since plaintiff's income, excess profits taxes and renegotiation liability were all finally determined in the year 1948 in the total amount of $424,367.52, the interest included in that total which had accrued in the amount of $68,130.37 was deducted by the plaintiff on its tax returns for the fiscal years ended June 30, 1948 and June 30, 1949.

On October 3, 1949, the plaintiff corporation submitted an offer in compromise of its income and excess profits tax and renegotiation liabilities. The plaintiff specifically noted that the offer in compromise was made to settle its aggregate liabilities of $424,367.52 for $317,314.27 (later reduced to $314,377.91) "because of the inability of the corporate-tax-payer-contractor to pay in full." On November 1, 1951, plaintiff was notified that the Attorney General of the United States had accepted the offer in compromise dated October 3, 1949, as amended by plaintiff's letters of October 15, 1949, March 3, 1950, February 16, 1951, and September 13, 1951. Under the terms of the compromise settlement, the liability for income and excess profits taxes, renegotiation liability and interest was reduced from $424,367.52 to $314,377.91 resulting in the plaintiff receiving a lump-sum credit of $109,989.61.

Under the terms of the compromise settlement, it was agreed that the plaintiff would liquidate its liabilities totaling $314,377.91 in the following manner:

A. Cash capital contribution by officer-stockholders .....$156,730.26

B. Payment from cash in the bank account of the corporation .........................................$ 57,647.65

C. Five promissory notes of the corporation bearing the personal endorsement of officer-stockholders ......$100,000.00

---

In addition to the above, the stockholders who signed the offer of compromise expressly waived "any and all claims to amounts of money to which they may be

entitled under the internal-revenue laws, due through overpayments with respect to their taxable years ended December 31, 1943, 1944 and 1945 made prior to the date of the acceptance of the said offer of any tax or other liability, including interest and/or ad valorem penalty, and interest on overpayments, or otherwise, as are not in excess of the difference between the liabilities sought to be compromised by the said offer and the amount offered in compromise; and agree that the United States may retain such amounts of money, if any." The plaintiff made its final payment of the liabilities as established by the compromise settlement on September 29, 1952.

In 1959, a Revenue Agent audited the Federal income tax returns, books and records of the plaintiff corporation for the period from January 1, 1956 to October 31, 1956, and for the fiscal years ended October 31, 1957 and October 31, 1958. The Revenue Agent added the amount of $68,130.37 to plaintiff's income for the year 1951. The reason given for this action was that the reduction in plaintiff's income and excess profits taxes and renegotiation liability for the years 1943, 1944 and 1945 by the 1951 compromise settlement in the amount of $109,989.61, included a cancellation in interest liability of $68,130.37, which was determined by the Commissioner to be income to the plaintiff corporation. The action of the Internal Revenue Service in adding $68,130.37 to plaintiff's income for fiscal year 1951 had the effect of reducing plaintiff's unused net operating loss carryover at January 1, 1956 from $58,136.21 to $4,032.58. For the fiscal year ended October 31, 1956, plaintiff claimed a net operating loss deduction in the amount of $25,947.-82, all except $4,032.58 of which was disallowed by the Commissioner. For the fiscal years ending October 31, 1957 and October 31, 1958, plaintiff claimed net operating loss deductions of $22,668.36 and $14,937.88, respectively. The net operating loss deductions for both of these years were disallowed in their entirety by the Commissioner.

On August 25, 1960, the Commissioner of Internal Revenue issued a notice of deficiency against the plaintiff. The deficiencies in principal of tax and interest thereon resulting from the disallowance by the Commissioner of the net operating loss deductions for the fiscal years ended October 31, 1956, 1957 and 1958 were as follows:

| Year | Tax | Interest |
|---|---|---|
| October 31, 1956 | $6,963.39 | $1,645.55 |
| October 31, 1957 | 7,791.32 | 1,373.72 |
| October 31, 1958 | 3,295.84 | 383.35 |

On October 21, 1960, plaintiff paid to the District Director of Internal Revenue the principal of tax, and on January 6, 1961, paid the interest, all as set forth above. On or about March 28, 1961, plaintiff filed with the District Director of Internal Revenue at New Orleans, Louisiana, in proper form, claims for refund of the income taxes and interest paid for the fiscal years ended October 31, 1956, 1957 and 1958.

Under the above stated facts, this court is called upon to decide whether or not the Commissioner of Internal Revenue was in error when he added $68,130.-37 to plaintiff's income for the year 1951, thereby reducing plaintiff's net operating loss deduction for the fiscal years 1956, 1957 and 1958.

At the outset it is noted that defendant does not challenge the propriety of the interest deduction by this accrual basis taxpayer for the fiscal years 1948 and 1949. It is defendant's position that the taxpayer realized $68,130.37 in income from the discharge of its obligation for

accrued interest previously deducted. Specifically, the defendant contends that:

> * * * By the Government's acceptance of the taxpayer's offer in compromise the taxpayer's total liability in the principal amount of $356,237 and interest of $118,003 ($68,130 of which had already been deducted) was settled for only $317,-314—an amount less than the principal debt alone.

Consequently, the defendant argues that the taxpayer has not carried its burden of proof that the discharge of its $68,-130 interest obligation did not result in income to it.

A further argument is made by defendant that in any event the taxpayer realized at least $66,329 in income from the discharge of its renegotiation liability previously credited and deducted.

As we view this case, it makes no difference whether the issue is referred to as cancellation of interest or whether it is referred to as income due to interest being excluded from the compromise settlement as accepted.

In this case there was a compromise settlement and the intent of the parties was quite clear on this point, as evidenced by plaintiff's letter to the defendant under date of January 24, 1951, which stated in part:

> To put it another way, it is meant on our part that there shall be *nothing* in the language of the joint offer agreement *which can, or shall be construed to mean any obligation at any time, now or in the future, on the part of the taxpayer-contractor corporation, or its officer-stockholders, to pay anything additional toward the extinguishment of the December 31, 1943, 1944 and 1945 income and excess profits taxes and renegotiation liabilities * * *.* [Emphasis added.]

Nothing was ever said to the contrary in any correspondence before or after the acceptance of the offer in compromise. Any correspondence after acceptance of the offer clearly alluded to something entirely different. The defendant never in any of the negotiations disputed its intention to agree to the settlement quoted above from the letter of January 24, 1951. Furthermore, it is obvious that the defendant must have known and considered the fact that accrued interest in the amount of $68,130 had been deducted in 1948 and 1949 by the plaintiff. Plaintiff's tax returns were in the possession of the defendant at all times. There was no compulsion on the defendant to enter into the settlement. It did so only in order to get the most money from a doubtful situation, and from the voluminous negotiations it is natural to conclude that the defendant considered everything, both pro and con, before accepting the compromise offer. Consequently, we can only conclude that the intention of the parties was to extinguish *all* obligations on the part of the taxpayer to the government.

A further obstacle looms we think in the path of the defendant. Under the provisions of the offer in compromise, as accepted by the Department of Justice on November 1, 1951, no amount of the settlement was specified as principal, nor was any amount of the settlement specified as interest. This is an exact reversal of the situation in the case of Lustig v. United States, 138 F.Supp. 870, 134 Ct.Cl. 351 (1956). In the Lustig case, the plaintiff contended that some of the amount paid under the closing agreement was paid as interest and, therefore, was deductible under the Revenue Code of 1939 as amended. The plaintiff argued that the amount paid represented the total correct liability of plaintiff and the corporate taxpayers and was not a compromise settlement. Defendant in the Lustig case contended that it was a compromise agreement; no allocation could be made and, therefore, no interest deduction should be allowed.

This court provided the answer of whether interest in a compromise agreement of taxes, penalties and interest is ever deductible. This court had this to say in respect to the above on pages 355–

356 (138 F.Supp. at 872–873) of the Lustig opinion:

> The defendant contends that if the 1947 closing agreement was a compromise, the lump-sum payment made after that agreement, was not a payment of income taxes, penalties, and interest, but was a payment in lieu of such liability, and no part of the payment is deductible as interest. The defendant relies on I.T. 3852, 1947–1 C.B. 15, which so states.
>
> If I.T. 3852 was intended to deny a deduction for interest in all cases where a lump-sum payment is made in compromise, regardless of whether the amount of interest included in the lump-sum payment can be ascertained, we disagree with it. See Max Thomas Davis et al. v. Commissioner [of Internal Revenue], 46 B.T.A. 663, where a deduction was allowed for the amount of interest set forth in the compromise agreement. If the amount of interest is ascertainable from the agreement or the circumstances surrounding the agreement, we see no reason for denying a deduction for the interest. However, if the amount of interest paid is not clearly ascertainable, and the lump-sum payment is less than the asserted or correct (depending on the type of compromise) principal amount due, no deduction for interest can be allowed because the interest has lost its identity and the taxpayer is unable to prove that he paid any interest, not because the lump-sum payment was made in lieu of taxes, penalties, and interest.

To the same extent that a taxpayer may not be able to clearly ascertain, in the absence of specific language, what portion of a lump-sum payment in a compromise agreement is interest, the Commissioner here cannot clearly ascertain what part of the lump-sum credit includes interest. If plaintiff in this case were seeking a deduction as a cash-basis taxpayer, for interest included in the compromise agreement, such a deduction would be disallowed, under the reasoning of the Lustig case, since no interest is ascertainable from the compromise agreement or from the surrounding circumstances. Inasmuch as the interest is not ascertainable by the plaintiff, were he seeking a deduction, the same interest is not ascertainable by the defendant, and there can be no interest income. In both instances, the interest has forever lost its identity. Lustig v. United States, supra.

The government argues that the tax benefit rule requires the inclusion of the amount of interest previously deducted. In general, the tax benefit rule applies if a previously deducted expense item is subsequently recovered by the taxpayer. The value of the item recovered is taxable in the year of its recovery, assuming that the prior deduction resulted in a tax benefit. However, we think such a rule does not apply to the instant situation. We say this, because the acceptance of the compromise settlement by the defendant included full consideration of the prior deduction, and such deduction was an integral part of the consideration of the compromise agreement. The effect of the compromise settlement itself and the intentions of the parties in entering into it was to extinguish all tax liabilities included in the items making up the compromise. To apply the tax benefit rule here would be contrary to the clear intent of the parties to the settlement agreement.[1]

For the above reasons, we hold that plaintiff, being an accrual basis taxpayer, properly deducted the accrued interest of $68,130.37 in 1948 and that no part thereof can be considered to be income in the year 1951. Accordingly, plaintiff's motion for summary judgment

1. In Denman Tire & Rubber Co. v. Commissioner of Internal Revenue, 192 F.2d 261 (C.A. 6, 1951), there does not appear to have been any proof, or claim, that the parties intended the settlement with the Government to be as comprehensive and all-embracing as the compromise made in the present case.

is granted, and defendant's cross-motion is denied.

Plaintiff is entitled to recover and judgment will be entered to that effect. The exact amount of recovery will be determined pursuant to Rule 47(c) (2) of the Rules of this court.