Sidney MESSER, Transferee, Appellant in No. 18,731

Nat Malamuth, Transferee, Appellant in No. 18,732

Estate of Samuel Antkies, Deceased, Transferee, Jack Antkies and Shirley Antkies, Executors, Appellant in No. 18,733

v.

COMMISSIONER OF INTERNAL REVENUE.

Nos. 18731–18733.

United States Court of Appeals, Third Circuit.

Argued Oct. 22, 1970.

Decided Feb. 10, 1971.

Michael S. Feinman, New York City (Stuart M. Berkman, New York City, on the brief), for appellants.

Gary R. Allen, Tax Division, Department of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

This is a joint appeal by two individuals and an estate, as transferees of the assets of Tel-O-Tube Corporation of America (Tel-O-Tube), the transferor, from decisions of the Tax Court entered October 10, 1969. The court below found that Tel-O-Tube owed federal income tax in the amount of $39,158.43 for its taxable year ending September 30, 1961 and asserted income tax liabilities against each of the appellants, as transferees of the assets of the dissolved corporation, in the same amount. The Findings of Fact and Opinion of the Tax Court are reported at 52 T.C. 440 (1969).[1] Jurisdiction in this Court is conferred by 26 U.S.C. § 7482.

The facts, as stipulated in part and as found by the Tax Court, are as follows:

Tel-O-Tube was incorporated in 1948 under the laws of New Jersey to engage in the manufacture and sale of television picture tubes. Commencing in 1953, it filed its federal income tax returns on an accrual basis for fiscal years ending September 30. Until July 10, 1960, Sidney Messer, Nat Malamuth and Samuel

1. A motion for reconsideration was denied by the Tax Court. This action is reported at 28 CCH Tax Ct.Mem. 1107 (1969).

Antkies were the corporation's sole stockholders, each owning one-third of its stock. On July 10, 1960, Samuel Antkies died, and his estate, with Jack Antkies and Shirley Antkies acting as co-executors, succeeded to his one-third interest in Tel-O-Tube.

Tel-O-Tube conducted its manufacturing operations under a patent licensing arrangement with Radio Corporation of America (R.C.A.), and for each of its fiscal years 1953 through 1957 accrued and deducted the following royalties due R.C.A.:

| | |
|---|---|
| 1953 | $20,032.15 |
| 1954 | 23,757.49 |
| 1955 | 28,439.19 |
| 1956 | 22,249.20 |
| 1957 | 17,727.62 |
| Total | $112,205.65 |

These royalties were not actually paid and in April, 1957, the corporation issued a series of promissory notes, covering the obligation, payable to R.C.A. and becoming due beginning April 1, 1962 and annually thereafter through April 1, 1974.

In 1957, the corporation terminated its manufacturing and sales operations and disposed of its operating assets. $100,000 of the proceeds of this sale was utilized to purchase four income-producing notes of the Manufacturers Credit Corporation. One of the purposes of this investment was to create a funded reserve for Tel-O-Tube's indebtedness to R.C.A. In the years 1958, 1959 and 1960, the income of the corporation consisted only of interest on the Manufacturers notes and small amounts from the sale of equipment and refund of insurance premiums.

A special meeting of the directors of the corporation, none of whom were shareholders, was held on September 19, 1960 and the following resolution passed:

"*Resolved,* that the corporation be dissolved forthwith and that its assets be distributed to the stockholders, subject to the payment of the claim of Radio Corporation of America.

"further

"*Resolved,* that the officers of the corporation take all action necessary to effectuate the foregoing."

Adjusting journal entries, dated September 30, 1960, reflecting each stockholder's distributive share of corporate assets were entered on the corporation's books.[2] On October 4, 1960, an information form 966, regarding the dissolution, was filed with the district director of internal revenue as were forms 1096 and 1099–L. The federal income tax return for the year ending September 30, 1960 was marked "Final Return." On December 6, 1960, a Certificate of Dissolution was issued by the Secretary of State of the State of New Jersey.

Manufacturers Creditor Corporation paid Tel-O-Tube interest on its notes through July, 1961. These payments were deposited in Tel-O-Tube's bank account and promptly distributed to each of the shareholders, equally. The notes remained in Tel-O-Tube's name until July, 1961, at which time Manufacturers Credit Corporation was advised to cancel the notes and issue new ones to the three shareholders. This was accomplished on August 1, 1961.[3]

On October 28, 1958, R.C.A. had entered into a consent decree with the Unit-

2. The journal entries showed the notes of Manufacturers Credit Corporation credited as follows:

| | |
|---|---|
| N. Messer | $31,054.12 |
| S. Messer | 33,469.22 |
| Estate of S. Antkies | 35,476.66 |
| | $100,000.00 |

The obligation to R.C.A. was charged one-third, or $37,401.88, to each of the stockholders. Each stockholder was credited as receiving $47,192.84, representing his distributive share of the cor-

porate assets reduced by the liability to R.C.A. assumed by each.

On their personal income tax returns for the calendar year 1960, Malamuth and Messer each reported liquidating distributions of $47,192.84, and a long-term capital gain thereon of $38,859.51.

3. The new notes were issued to the Estate of Samuel Antkies, Nat Malamuth and Sidney Messer in the amounts of $35,000, $35,000 and $30,000, respectively, and were labeled "exh. Tel-O-Tube".

ed States as a result of a government challenge to R.C.A.'s licensing structure. In May, 1960, a meeting of Tel-O-Tube's stockholders was called for the purpose of discussing whether an antitrust action should be brought against R.C.A. An attorney was retained to institute suit for violation of the antitrust laws and patent misuse.[4] This attorney withdrew approximately one month later and although no suit was ever commenced, negotiations with R.C.A. continued through other counsel. These negotiations were pending when the dissolution resolution was passed. In the spring of 1961, Tel-O-Tube advised R.C.A. that the promissory notes should be returned because "the royalties were not properly payable" due to violations of the antitrust laws. A settlement agreement was executed on June 15, 1961, under which R.C.A. returned the notes of Tel-O-Tube and cancelled the indebtedness for royalties. In return the corporation executed a general release of any claim it might have had against R.C.A. This release was executed in Tel-O-Tube's name by Sidney Messer, acting in his capacity as secretary-treasurer, and recited that the corporation was organized and existing under the laws of New Jersey.[5] R.C.A. was never advised that Tel-O-Tube had assigned its claim and had it been so advised, R.C.A. would have insisted upon releases from the parties to whom the claim had been assigned.[6]

On July 18, 1961, Tel-O-Tube received a bill from counsel for services rendered which it subsequently paid on November 6, 1961. In addition, on July 12, 1961,

upon being advised of the cancellation of the indebtedness to R.C.A., the corporation's accountant wrote to each of the shareholders. Each letter, in pertinent part, stated:

"In order to complete the liquidation of Tel-O-Tube * * * the $100,000.00 invested in the notes of Manufacturers Credit Corp. are to be disbursed as follows:

| The Estate of | |
|---|---|
| Samuel Antkies .. | $35,476.66 |
| Nat Malamuth ..... | 31,054.12 |
| Sidney Messer ..... | 33,469.22 |
| | $100,000.00" |

This led to the issuing of new notes previously referred to.

The Commissioner of Internal Revenue determined that Tel-O-Tube was subject to federal corporate income tax on the interest received by it on the Manufacturers Credit Corporation notes and on the discharge of its indebtedness to R.C.A. to the extent that the previous deductions for royalties had resulted in a tax benefit to the corporation. The taxpayers stipulated that they were liable for any taxes which Tel-O-Tube owed.

The Tax Court sustained the Commissioner. It concluded that Tel-O-Tube did not distribute the potential claim against R.C.A. or the Manufacturers notes prior to July, 1961. The court found that the corporation remained a viable entity for federal income tax purposes through November, 1961 and thus, was taxable on the interest received subsequent to September 30, 1960. The Court went on to find that the discharge of its indebted-

---

4. The retainer agreement provided that counsel was to receive 10 percent of any royalty obligation released through recovery or settlement. If more than the $112,205.65 was recovered, an additional fee was provided for.

5. The release also contained a statement, notarized by the attorney, to the effect that Messer had sworn he was the secretary-treasurer of the corporation and that he had signed the release and affixed the corporate seal thereto by the order of the corporation's board of directors.

6. The release of the R.C.A. indebtedness was reflected in the 1961 personal income

tax returns of Malamuth and Messer. Each reported an additional $39,087.13 in liquidating distributions from Tel-O-Tube for that year. This sum included the cancellation of the indebtedness and additional cash distributions.

The Estate of Samuel Antkies reported the date of death value of the decedent's stock in Tel-O-Tube as $84,594.73. This valuation was made without reduction for the obligation due R.C.A. Therefore, upon cancellation of the liability, no additional liquidating distributions were reported.

ness to R.C.A. was taxable to the corporation as ordinary income, holding that Taxpayers' alternative claim under § 337 of the Internal Revenue Code of 1954 was not properly before it and further that § 337 was not applicable. We affirm the Tax Court.

■ A corporation is subject to federal corporate income tax liability as long as it continues to do business in a corporate manner, despite the fact that its recognized legal status under state law is voluntarily or involuntarily terminated. National Metropolitan Bank of Washington v. United States, 345 F.2d 823, 170 Ct.Cl. 617 (1965); Hersloff v. United States, 310 F.2d 947, 159 Ct.Cl. 366 (1962), cert. denied, 373 U.S. 923, 83 S.Ct. 1524, 10 L.Ed.2d 422 (1963); Ochs v. United States, 305 F.2d 844, 158 Ct.Cl. 115 (1962), cert. denied, 372 U.S. 968, 83 S.Ct. 1093 (1963); Coast Carton Co. v. Commissioner, 149 F.2d 739 (9 Cir. 1945); Poplar Bluff Printing Co. v. Commissioner, 149 F.2d 1016 (8 Cir. 1945). A liquidating corporation continues its federal tax existence so long as it retains valuable assets. Treas.Reg. on Income Tax § 1.6012–2;[7] J. Ungar, Inc. v. Commissioner, 244 F.2d 90 (2 Cir. 1957).

■ Appellants do not challenge this rule but contend that the corporate resolution of September 19, 1960, requiring forthwith dissolution and distribu-

tion of assets and the subsequent closing journal entries manifested an intention to distribute the Manufacturers' notes and the legal claim against R.C.A. and, thus, was sufficient to operate as an assignment of all corporate assets, prior to the receipt of the income in question. While it is true that it is not always necessary to utilize formal assignments where closely held corporations are involved, *Novo Trading Corp. v. Commissioner*, 113 F.2d 320 (2 Cir. 1940); Gensinger v. Commissioner, 208 F.2d 576 (9 Cir. 1953), an informal distribution must appear from objective conduct, reflecting an intention by the shareholders to take the assets in their own right and to dispense with further use of the corporate form with respect to such assets.[8] Book entries, although some evidence of an informal distribution, are determinative only where they are consistent with the conduct of the parties. Stout v. Commissioner, 273 F.2d 345 (4 Cir. 1959). The record below demonstrates a sufficient inconsistency between the book entries and the actual conduct of the corporation to support the Tax Court's finding that the assets were not distributed before the receipt of the income which they generated.

Looking first at the claim against R.C.A., it is clear that no distribution thereof was ever made by the corporation. Despite the fact that the corpora-

---

7. That regulation provides:

"(2) *Existence of corporation.* A corporation in existence during any portion of a taxable year is required to make a return. If a corporation was not in existence throughout an annual accounting period (either calendar year or fiscal year), the corporation is required to make a return for that fractional part of a year during which it was in existence. A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets and therefore continues in exist-

ence. A corporation does not go out of existence if it is turned over to receivers or trustees who continue to operate it. * * *"

8. In Novo Trading Corp., supra, the three stockholders of a corporation, who were also its only officers and directors, entered into a formal written agreement reciting their decision to "dissolve said corporation and liquidate its affairs." The agreement went on to set forth the distribution of the corporate assets. The Court of Appeals found that "the liquidation agreement was intended to effect a distribution in kind of all the remaining assets of the corporation." This was not so in the present case. The resolution adopted provided that the officers should "take all steps necessary to effectuate" the dissolution. Thus, further action on the part of the officers was contemplated.

tion had decided to commence suit against R.C.A. in May of 1960, the journal entries of September, 1960 make no reference to any distribution of the antitrust claim. Tel-O-Tube, not the shareholders, retained counsel to prosecute the claim and Tel-O-Tube paid the counsel fees involved. Furthermore, it was Tel-O-Tube that executed the general release of any claim it might have had against R.C.A. R.C.A. was never advised of the dissolution of the corporation or of the distribution of the claim to its stockholders. From these facts, it is reasonable to conclude that all parties to the negotiations considered that they were dealing with Tel-O-Tube's indebtedness and Tel-O-Tube's claim.

With respect to the Manufacturers Credit Notes, the evidence sufficiently established that the corporation continued to exercise dominion and control over them, despite the indication in the journal entries that a distribution had taken place on September 30, 1960. The notes remained in the possession of appellant Messer, in his capacity as Tel-O-Tube's treasurer. Title remained in the corporation's name and interest was received by the corporation and deposited in a corporate bank account. While this interest was immediately distributed to the stockholders, it is significant that such distribution was made in proportion to the equal interest of the stockholders in the corporation rather than in proportion to their unequal interest in the notes as reflected in the journal entries of September 30, 1960 and in the July 12, 1961 letter written by the corporation's accountant, London, to the stockholders. London's testimony indicates that, as early as May 1960, a tentative decision was made that the corporation would retain the notes until the question of R.C.A.'s liability was finally resolved. In fact, it was not until the settlement was executed that Tel-O-Tube requested new notes be issued in the names of the several shareholders and, through its accountant, advised the shareholders that it would be necessary to disburse the notes to complete Tel-O-Tube's liquidation.

We are of the opinion that appellants have failed to show that the findings of the Tax Court with regard to the distribution of the corporate assets [9] were clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

We turn now to the Tax Court's determination that the proceeds of the settlement were taxable as ordinary income to the corporation and hence to the appellants.

It was contended in the Tax Court and argued here that, even if the corporation did not distribute the claim against R.C.A. in liquidation prior to settlement, any gain realized upon settlement of the claim was not taxable to the corporation because such gain was not recognizable under § 337 of the Internal Revenue Code of 1954, 26 U.S.C. § 337.[10] That section provides:

"(a) General rule—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954 and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

In support of this argument, appellants contend that the claim against R.C.A. was for injury to Tel-O-Tube's business and hence constituted property within the meaning of that term, that the settlement of the claim constituted a sale or ex-

---

9. It should also be pointed out that the Tax Court found that Tel-O-Tube retained other assets of $12,277.21, in addition to the notes and the claim in issue, and liabilities of $4,500, exclusive of the $112,205.65 indebtedness to R.C.A.

10. Because the Tax Court went on to consider the merits of the Section 337 claim, we do not consider the holding of that court that the claim was not properly before it.

change and that Tel-O-Tube otherwise complied with the requirements of § 337.

■ The determination of whether the settlement proceeds constituted property of the corporation depends on the nature and basis of the claim settled. United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500 (1936); Commissioner of Internal Revenue v. Murdoch, 318 F.2d 414 (3 Cir. 1963), cert. denied, 375 U.S. 879, 84 S.Ct. 149, 11 L.Ed.2d 111 (1963); Carter's Estate v. Commissioner, 298 F. 2d 192 (8 Cir. 1962), cert. denied, 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962). If the settlement reflected a negotiated adjustment of a contested royalty obligation, it is taxable to Tel-O-Tube as a recovery of ordinary income previously deducted to the extent that tax benefit was derived therefrom. Alice Phelan Sullivan Corp. v. United States, 381 F.2d 399, 180 Ct.Cl. 659 (1967); Eagle Asbestos & Packing Co. v. United States, 348 F.2d 528, 172 Ct.Cl. 304 (1965); Buck Glass Co. v. Hofferbert, 176 F.2d 250 (4 Cir. 1949); Helvering v. Jane Holding Corp., 109 F.2d 933 (8 Cir. 1940), cert. denied, 310 U.S. 653, 60 S.Ct. 1102, 84 L.Ed. 1418 (1940); Standard Brass & Manufacturing Co. v. Commissioners, 20 T.C. 371 (1953), aff'd, 218 F.2d 352 (5 Cir. 1955). On the other hand, if the claim was for the destruction of Tel-O-Tube's business or good will, the settlement proceeds represent a return of capital. Durkee v. Commissioner, 162 F.2d 184 (6 Cir. 1947); Raytheon Production Corp. v. Commissioner, 144 F.2d 110 (1 Cir. 1944), cert. denied, 323 U.S. 779, 65 S.Ct. 192, 89 L.Ed. 622 (1944).

■ Such a return of capital would constitute property of the corporation under the definition contained in § 337 (b) of 26 U.S.C.[11] The burden of proving that a settlement represents a recovery of capital, rather than ordinary income, rests with the taxpayer. Morse v. United States, 371 F.2d 474, 178 Ct. Cl. 405 (1967); Commissioner of Internal Revenue v. Murdoch, supra; Sager Glove Corp. v. Commissioner, 311 F.2d 210 (7 Cir. 1962), cert. denied, 373 U.S. 910, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963), and absent an affirmative showing that a recovery does not represent compensation for lost earnings and profits, the recovery will be taxable as ordinary income. Carter's Estate v. Commissioner, supra; Phoenix Coal Co. v. Commissioner, 231 F.2d 420 (2 Cir. 1956).

■ While there is some testimony to the effect that R.C.A. had injured Tel-O-Tube's capital value,[12] there was insufficient evidence to establish that this was the basis of the claim against R.C.A. Indeed, at one point in their brief, appellants state: "The stockholders considered the claim against R.C.A. for patent misuse as a defense or offset to the liability due R.C.A. for accrued royalties which they had assumed." This theory of suit is borne out by the letter retainer of counsel as well as the testimony of Robert L. Werner, Executive Vice-President and General Counsel of R.C.A.

11. The definition of "property" in § 337 (b) is almost identical to the definition of capital assets contained in § 1221. Both sections are designed to give preferential tax treatment to sales of certain types of assets not held for sale in the ordinary course of business. Commissioner of Internal Revenue v. Anders, 414 F.2d 1283 (10 Cir. 1969); Pridemark, Inc. v. Commissioner, 345 F.2d 35 (4 Cir. 1965). Goodwill is considered a capital asset under § 1221 and thus, should be so considered for purposes of § 337. Commissioner of Internal Revenue v. Killian, 314 F.2d 852 (5 Cir. 1963); Terminal Co. v. United States, 296 F.Supp. 1084 (D.Del.1969); Note, Tax-Free Sales in Liquidation under Section 337, 76 Harv.L.Rev. 780 (1963).

12. Maurice Danson, Tel-O-Tube's attorney, testified that "They [R.C.A.] were in effect forcing customers who had to buy these small tubes to purchase the big tubes which Teletube (sic) was making. And in order to get them to purchase the big tubes, they reduced the price to a point where Teletube (sic) could not successfully and profitably manufacture the big tube but at the same time they were increasing the price on the small tubes to make up for the difference." Sidney Messer testified that "[R.C.A.] actually forced us out of business."

The Tax Court held that taxpayers failed to show that the Commissioner of Internal Revenue had erred in determining that the corporation had realized taxable income from the cancellation of the indebtedness and return of the notes. We find ample support in the record for this determination. Because this holding disposes of the case we need not consider other contentions raised on this appeal.

The opinion of the Tax Court will be affirmed.