**UNITED STATES of America,
Appellant,**

v.

**McDONALD & EIDE, INC., Frank A. Gunnip, Receiver of McDonald & Eide, Inc., and Frank A. Gunnip, Liquidating Trustee for the Benefit of the Share Equivalent Unit Holders of the Receivership Estate of McDonald & Eide, Inc., Appellees.**

No. 88–3343.

United States Court of Appeals,
Third Circuit.

Argued Oct. 20, 1988.

Decided Jan. 13, 1989.

As Amended Jan. 23, 1989.

Gary R. Allen, Wynette J. Hewett, Murray Horwitz (argued), Chief, Appellate Section, Tax D., Dept. of Justice, Washington, D.C., for appellant.

Leonard S. Togman (argued), Richard L. Horwitz, Potter, Anderson & Corroon, Wilmington, Del., for appellees.

Before SLOVITER and
HUTCHINSON, Circuit Judges, and
GERRY, Chief District Judge.*

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

This case involves an attempt by the United States of America (government) to recover corporate income tax refunds it contends were erroneously issued for the years 1982 and 1983 to McDonald & Eide, Inc. (M & E). M & E's receiver, Frank Gunnip, counterclaimed, alleging he was entitled to a refund of corporate taxes paid for the years 1979–81 as well. Gunnip argued that M & E was not in existence for

federal income tax purposes during the years in question. The United States District Court for the District of Delaware granted M & E's motion for summary judgment, denied the government's cross-motion, and awarded M & E refunds for taxes paid in 1979–81, as well as statutory interest. The government appeals.

We have appellate jurisdiction under 28 U.S.C.A. § 1291 (West Supp.1988). The district court correctly found that M & E was not in existence for federal income tax purposes during the relevant period. Therefore, we will affirm.

### I.

"[T]he parties do not dispute any material issues of fact." *United States v. McDonald & Eide, Inc.*, 670 F.Supp. 1226, 1227 (D.Del.1987). M & E was incorporated in 1953 under the laws of Delaware and engaged in the business of oil and gas exploration in Montana. In 1954, the company invested nearly all its capital in a single well which proved to be dry. In 1955, M & E ceased all business operations. Acting under state law, Delaware's governor revoked M & E's corporate charter in January 1958 for failure to pay franchise taxes. The shareholders were informed that the company had no assets and was defunct.

Between 1958 and 1961, title to all of M & E's assets, including part interests in various mineral rights and oil and gas leases, was transferred from the corporation to a group of former officers. In February 1965, ten years after M & E ceased all business operations and seven years after it lost its corporate charter, some former M & E shareholders filed a legal action in the Delaware Court of Chancery against the former corporate officers and directors for fraud, embezzlement, and misappropriation of corporate assets and sought the appointment of a receiver. Granting that request, the state court appointed Frank Gunnip.[1]

---

* Hon. John F. Gerry, Chief United States District Judge for the District of New Jersey, sitting by designation.

1. The court appointed Gunnip

with the usual powers and duties of a Receiver and in particular with the power to take possession of and safely keep all the assets, money, property of whatever kind or nature,

As receiver, Gunnip brought two suits against former M & E officers and shareholders. In an action filed in Minnesota, he sought surrender of capital stock for which they had not paid valuable consideration. In another action filed in Montana, he sought recovery of misappropriated mineral rights and lease interests. Judgment for Gunnip was entered in the Montana action in 1970. The Minnesota case settled favorably to Gunnip and M & E in 1972.

The Montana mineral rights and lease interests Gunnip recovered at first seemed worthless. In 1979, however, they began producing royalties which were paid to Gunnip as receiver. Since then, Gunnip has sought to identify all former M & E shareholders entitled to a distributive share of these royalties.

Except for the Montana and Minnesota suits and his attempts to identify former shareholders entitled to royalty distributions, Gunnip's activities have been minimal. He did, however, institute suits in 1979 to determine the amount M & E was owed pursuant to a lease and in 1985 to quiet a leasehold interest title. All his activities have been conducted under the supervision of the Delaware Court of Chancery.

In January 1981, Gunnip requested a letter ruling from the Internal Revenue Service (IRS) whether he was required to file corporate income tax returns for M & E reporting the royalty income from the lease interests. The IRS ruled that M & E was still in existence for income tax purposes and therefore that Gunnip, as receiver, was required to file returns for M & E. Although he did so for the years 1979 to 1983, he paid the taxes due under protest, asserting that M & E was not then in existence. The government took no action on the 1979–81 returns but did refund the taxes paid for 1982 and 1983. It then brought this action to recover the 1982 and 1983 refunds.

books, records, files, and papers of the said corporation, and with power to institute and prosecute any necessary and appropriate action in any Court for such purpose.

## II.

### A.

In reviewing a district court's decision on a motion for summary judgment, we apply the same standard as the district court. *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir.1988). Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. For Rule 56 purposes, the evidence is viewed in the light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983), the non-movant's allegations are accepted as true, and any conflicts are resolved in his favor. *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (quoting *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)).

### B.

Applicable federal treasury regulations state that "[a] corporation in existence during any portion of a taxable year is required to make a return." 26 C.F.R. § 1.6012–2(a)(2) (1988). The Internal Revenue Code requires receivers to file income tax returns for their corporations "in the same manner and form as corporations are required to make such returns." 26 U.S. C.A. § 6012(b)(3) (West Supp.1988); *see also* 26 C.F.R. § 1.6012–3(b)(4) (1988). Returns must be filed "whether or not such property or business is being operated." 26 U.S.C.A. § 6012(b)(3). The district court correctly concluded that "the critical question ... is whether M & E existed during the years in question." *McDonald & Eide*, 670 F.Supp. at 1229.

■ At the threshold, we must determine whether federal or state law governs this question. The district court utilized

Appendix at 62.

both in its analysis. After first reviewing Delaware corporate law, Judge Latchum concluded that "as a matter of Delaware law M & E did not legally exist as a corporation in 1979 or any year thereafter." *Id.* at 1231. State law cannot determine status for federal tax purposes. However, the district court went on to examine federal treasury regulation 1.6012–2(a)(2) and concluded that "the federal definition of existence can be more restrictive than a potential state law definition of existence. M & E meets this federal definition. By 1979 M & E had long ago ceased business, dissolved and distributed its assets." *Id.* We agree.

■ The core test of corporate existence for purposes of federal income taxation is always a matter of federal law. *See Ochs v. United States,* 305 F.2d 844, 847, 158 Ct.Cl. 115 (1962) ("[w]hether an organization is to be taxed as a corporation under the Code is determined by Federal, not state, law."). The district court did not hold otherwise; indeed, it explicitly applied the federal definition. Disputing the relevance of the district court's references to state corporate law, the government refers us to our decision in *Messer v. Commissioner,* 438 F.2d 774 (3d Cir.1971). In *Messer,* we stated that "[a] corporation is subject to federal corporate income tax liability as long as it continues to do business in a corporate manner, despite the fact that its recognized legal status under state law is voluntarily or involuntarily terminated." *Id.* at 778. *Messer* correctly holds that state law is not determinative; however, because there is no body of federal common law on corporations, analysis of state common law is sometimes necessary to fill in the interstices. Nevertheless, state law is not controlling. Reference to the statutory and common law of the corporate domicile may be useful in determining whether a corporate taxpayer has dissolved or still holds assets. The extent of its utility depends, however, on its consistency with the purposes of the federal tax law. Looked to in this limited way, state law is used where persuasive, but ignored when not in accord with the policies of the Internal Revenue Code.

Here, the district court's reference to state law does not determine the federal question.

### III.

■ Looking to federal law, we consider the applicable treasury regulation. It provides in relevant part:

*Existence of corporation.* A corporation in existence during any portion of a taxable year is required to make a return.... A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets and therefore continues in existence. A corporation does not go out of existence if it is turned over to receivers or trustees who continue to operate it.

26 C.F.R. § 1.6012–2(a)(2). Under this regulation, we agree with the district court that M & E did not exist for purposes of federal income taxation during the years in question. It ceased doing business in 1955, more than two decades before appearance of the royalty income the government now seeks to tax. It was dissolved in 1958 when the governor of Delaware revoked its corporate charter. There remains only the question of whether M & E retained any assets. We therefore turn to that issue.

After the revocation of its corporate charter, M & E transferred title to its existing assets to a group of former officers. The government argues that the suits Gunnip brought during his tenure as receiver constituted "valuable claims" which were not transferred and which therefore serve to keep M & E in existence. We disagree. The treasury regulation states that "[i]f the corporation has valuable claims for which it will bring suit *during this period* [of winding up its affairs], it has retained assets and therefore continues in exist-

ence." *Id.* (emphasis added). In this case, any such period for winding up corporate affairs had ended by 1961 when the process of transferring M & E's assets to its former officers was complete.[2] The claims Gunnip pursued years later resulted only from an investigation initiated by former shareholders into possible misappropriation of former assets. The subsequent pursuit of these claims, which culminated in favorable judgments a decade after M & E initially transferred them and in royalties nearly another decade later, does not make them "valuable claims" which can keep a corporation in existence for purposes of federal income taxation.

If the pursuit of claims for possible misappropriation of corporate assets which are not discovered until years after the transfer of those assets is sufficient to maintain corporate existence, then the ghosts of long dead corporations may ever be evoked and made to live again upon the apparition of any property claim.

Suspicion and investigation of alleged misappropriation arose almost a decade after M & E ceased doing business, lost its corporate charter, and transferred its assets. The royalties began almost another decade later. Even if such suspicion and investigation had arisen *fifty* years later, under the government's argument M & E would still exist. This would contradict the language of the regulation limiting the class of claims included in the definition of retained assets to those for which the corporation will bring suit during the period of winding up its affairs. M & E was "wound up" by the time suit was brought on these claims. The district court correctly rejected the argument as a matter of federal law.

Because M & E was not in existence during the relevant period, we will affirm the district court's order granting summary judgment for M & E and awarding a refund for the taxes Gunnip paid on M & E's behalf for 1979–81, and statutory interest.

**2.** The district court made reference to the three-year dissolution period allowed under Delaware law. *McDonald & Eide,* 670 F.Supp. at 1230.