T.C. Memo. 2003-84

UNITED STATES TAX COURT

ESTATE OF DORA HALDER, DECEASED,
ANITA HALDER MACDOUGALL, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5018-01.              Filed March 25, 2003.

<u>Robert D. Whoriskey</u>, for petitioner.

<u>Monica E. Koch</u>, for respondent.

MEMORANDUM OPINION

VASQUEZ, <u>Judge</u>:  This case is before the Court on the
estate's motion for entry of decision.  The issue for decision is
whether the parties reached a basis of settlement with regard to
the value of decedent's interest in the Halder MacDougall
Investment Co. (the limited partnership) as of the date of death.

Background

Dora Halder (decedent) died on April 21, 1997, in New York, New York. Decedent's daughter, Anita Halder MacDougall, resided in Oyster Bay, New York, when the petition was filed in this case.

The petition disputed, among other adjustments, respondent's determination in the notice of deficiency that the fair market value of decedent's interest in the limited partnership was $1,627,960 on the date of death. On October 17, 2001, the Court set the trial date for March 18, 2002.

On December 14, 2001, the parties met with Appeals Officer Howard H. Lindenbaum (Mr. Lindenbaum) to discuss the case. Mr. Lindenbaum, respondent's counsel Monica E. Koch (Ms. Koch), the estate's counsel Robert D. Whoriskey (Mr. Whoriskey) and co-counsel Charles R. Goulding (Mr. Goulding), and the estate's accountant Gordon S. Sherland (Mr. Sherland) were present at this meeting. The parties discussed the value of the limited partnership. The estate's representatives indicated that they would make an offer of settlement following this meeting.

On January 10, 2002, Mr. Sherland sent Mr. Lindenbaum a settlement proposal in which Mr. Sherland proposed that, as a starting point for the calculation, the limited partnership be valued at $869,000 in 1987, when the estate claims the limited partnership was formed.

On January 14, 2002, Mr. Lindenbaum notified Mr. Sherland by telephone that the value in the proposal was not acceptable (the January 14, 2002, telephone conversation). In this conversation, Mr. Lindenbaum explained that he calculated a value of $1,124,410 for the limited partnership on the date of death, based upon its value of $1 million in 1987. Mr. Lindenbaum offered to fax Mr. Sherland his "chicken scratchings" to show how the $1,124,410 value was calculated.

On that day, Mr. Lindenbaum faxed Mr. Sherland his calculations which mistakenly valued "decedent's partnership interest" at $1 million on the date of death (the January 14, 2002, fax). Mr. Sherland realized upon receipt of the fax that the $1 million figure was less than the value Mr. Lindenbaum proposed earlier that day. Mr. Sherland did not contact Mr. Lindenbaum regarding the discrepancy. Mr. Sherland contacted Mr. Whoriskey, Mr. Goulding, and Ms. MacDougall regarding Mr. Lindenbaum's proposal of a $1,124,410 value and informed them of the discrepancy in the faxed document. Mr. Goulding advised Mr. Sherland not to contact Mr. Lindenbaum regarding the discrepancy. The estate's representatives also advised Mr. Sherland to agree to the $1 million figure in the January 14, 2002, fax.

On January 16, 2002, Mr. Sherland sent a fax to Mr. Lindenbaum in which Mr. Sherland agreed to Mr. Lindenbaum's $1 million figure contained in the January 14, 2002 fax. On the

next day, Mr. Lindenbaum left a telephone message for Mr. Sherland that an error was made in the January 14, 2002, fax, and Mr. Sherland would receive the corrected figures by fax. On that day, Mr. Lindenbaum sent a fax to Mr. Sherland (the January 17, 2002, fax). The fax stated:

> Unfortunately my fax to you was incorrect. I had left off page six and in the rush to get it out to you used the value of property in 1987 as the final value and not the value of decedents [sic] interest at the time of death of $1,124,410. I told you this was the amount over the phone and discussed that I was following the method that you used on the tax return but using the starting value for the real estate of $1,000,000 and while I felt their [sic] was an argument for no discount I would allow a 15% discount for settlement. We did discuss the final value of $1,124,410.

On January 22, 2002, Mr. Sherland sent a fax to Mr. Lindenbaum which stated:

> Everyone now realizes that the first figures you discussed with me on the phone and your settlement fax offer are substantially different. We believe that you made an honest mistake. However, for our part we believe, after deliberating with our counsel and our client, that we had accepted a basis of settlement that made sense if you took into account both the expenses and uncertainties of litigation.

Mr. Sherland further informed Mr. Lindenbaum that a basis of settlement had been reached. In a telephone conversation soon after, Mr. Lindenbaum told Mr. Sherland that Mr. Lindenbaum would only discuss the figures in the January 17, 2002, fax and discussed in the January 14, 2002, telephone conversation (i.e., the value of $1,124,410). Mr. Lindenbaum did not feel an agreement had been reached with the estate and, therefore, did

not seek authorization from his supervisor, Harold J. Finkelstein, Lead Appeals Team Manager, on the discussed values.

On February 22, 2002, Ms. Koch met with the estate's representatives, during which Mr. Whoriskey again raised the issue that an enforceable basis of settlement had been reached by Mr. Lindenbaum and Mr. Sherland.  Prior to the filing of the instant motion, the parties did not execute any documents or file any documents with the Court regarding these discussions, nor did the parties make any representations to the Court that a basis of settlement had been reached.

On March 7, 2002, the estate filed a motion for entry of decision based upon an agreed basis of settlement.  On March 18, 2002, respondent filed a notice of objection wherein he objected to the granting of the estate's motion.  The Court scheduled the evidentiary hearing on March 25, 2002.  Additionally, the Court granted the estate's motion for continuance of the trial because the estate's expert could not testify on the scheduled date due to health concerns.

Discussion

The Court applies general principles of contract law to compromises and settlements of Federal tax cases.  We stated in Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969), that "a compromise is a contract and thus is a proper

subject of judicial interpretation as to its meaning, in light of the language used and the circumstances surrounding its execution." See also Brink v. Commissioner, 39 T.C. 602, 606 (1962), affd. 328 F.2d 622 (6th Cir. 1964); Saigh v. Commissioner, 26 T.C. 171, 177 (1956); Davis v. Commissioner, 46 B.T.A. 663, 671 (1942); Himmelwright v. Commissioner, T.C. Memo. 1988-114. In a tax case, settlement agreements may be reached through correspondence, in the absence of a formal document. Manko v. Commissioner, T.C. Memo. 1995-10.

A prerequisite to the formation of an agreement is an objective manifestation of mutual assent to its essential terms, also known as a "meeting of the minds". U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 146 (2d Cir. 2001); Am. Merch. Marine Ins. Co. v. Letton, 9 F.2d 799, 801 (2d Cir. 1926); Kronish v. Commissioner, 90 T.C. 684, 693 (1988); Manko v. Commissioner, supra. The determination of whether there was a meeting of minds sufficient to constitute a contract is one of fact. U.S. Titan Inc. v. Guangzhou Zhen Hua Shipping Co., supra at 145.

We are asked to decide whether the parties entered into a contract to settle the case. Based on the evidence, we conclude that there was not a meeting of the minds, and, therefore, no basis of settlement was ever reached by the parties. Mr.

Lindenbaum and Mr. Sherland discussed the values in the January 14, 2002, telephone conversation. The calculations faxed to Mr. Sherland on that day were to support Mr. Lindenbaum's proposed value of $1,124,410. Upon receipt, Mr. Sherland knew that the value of $1 million was different from the $1,124,410 value discussed in the telephone conversation held just before. Instead of requesting clarification, the estate's representatives tried to agree to the lower value because it was to their advantage. Mr. Lindenbaum immediately contacted the estate's representative, Mr. Sherland, to clarify the error. As apparent from the faxes afterwards, both parties acknowledged that Mr. Lindenbaum made an "honest mistake". Holding that a settlement basis had been reached would allow the estate to take an unfair advantage of a simple, honest error that was immediately corrected.

The estate argues that our holdings in Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988), and Dorchester Indus., Inc. v. Commissioner, 108 T.C. 320 (1997), affd. 208 F.3d 205 (3d Cir. 2000), are "unusually clear and precise" in supporting its argument that the Court should not vacate the alleged settlement agreement based upon respondent's unilateral mistake. In Adams v. Commissioner, 85 T.C. 359, 375 (1985), we set forth criteria to be used when determining whether we should exercise our discretion to modify or set aside a settlement stipulation:

> The party seeking modification, however, must show that the failure to allow the modification might prejudice him. * * * Discretion should be exercised to allow modification where no substantial injury will be occasioned to the opposing party; refusal to allow modification might result in injustice to the moving party; and the inconvenience to the Court is slight. [Citations omitted.]

In Stamm and Dorchester Indus., we applied "stringent eve-of-trial standards" rather than criteria applied in Adams v. Commissioner, supra, in deciding whether to vacate a settlement agreement because the agreements led to the cancellation of imminent trial dates.[1]  Dorchester Indus., Inc. v. Commissioner, supra at 336.  Further, in each case, the parties had either filed a stipulation of settled issues with the Court or notified the Court that an agreement had been reached.  Id. at 327; Stamm Intl. Corp. v. Commissioner, supra at 317; Adams v. Commissioner, supra at 367.

We find those cases distinguishable from the instant case because:  (1) The parties did not reach a meeting of minds, execute any settlement agreement, notify the Court that a settlement had been reached, or file a stipulation of settled issues with the Court; (2) the Court did not cancel or delay the

---

[1]  The "stringent standards" were that the moving party must satisfy standards similar to those applicable in vacating a judgment entered into by consent; i.e., the judgment will be upheld unless there is a showing of a lack of formal consent, fraud, mistake, or some similar ground.  Dorchester Indus., Inc. v. Commissioner, 108 T.C. 320, 335 (1997), affd. 208 F.3d 205 (3d Cir. 2000).

trial date because of any settlement between the parties (i.e., the Court granted a continuance in this case because the estate's expert was ill); and (3) Mr. Lindenbaum contacted Mr. Sherland with regard to the error <u>the next day</u>.

We do not believe that the estate should reap an undue advantage from the error. See <u>Sergy v. Commissioner</u>, T.C. Memo. 1990-442. We believe that an injustice would occur if we were to require respondent to adhere to the $1 million value reflected in the January 14, 2002, fax. We find that there was no meeting of the minds between the parties, and we shall deny the estate's motion for entry of decision.[2]

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.

---

[2] Even if we held there was a meeting of minds, we would deny the estate's motion because the "settlement" was never signed or approved by, or even submitted to, any IRS official authorized to approve it. <u>Gardner v. Commissioner</u>, 75 T.C. 475, 479 (1980).