## WILLIAM C. ATWATER & CO. v. BOWERS.

District Court, S. D. New York.

Feb. 9, 1934.

John L. Steinbugler and Leo H. Hoffman, both of New York City (Robert W. Knox, of New York City, of counsel), for plaintiff.

Martin Conboy, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

I direct a verdict in favor of the defendant in this case and judgment may be entered accordingly.

I. I think that there are only two questions involved in this case, both of which turn on the construction of documents.

The stipulation of facts has been amplified by the filing of documentary exhibits, which have been admitted in all cases without objection to their competency although as to some there have been objections as to materiality and relevancy. I overrule those objections and I accept all of those documents as exhibits so that we shall have a full record in the event of appeal.

II. The question of limitation involves the question whether when the Commissioner of Internal Revenue, on March 19, 1927, made the final assessment of the plaintiff's deficiency in income tax for the tax years 1918 and 1919, it was within his competence to do so, or whether the time for him to act had elapsed.

By the execution of various mesne waivers, the time for making any assessment as against the plaintiff in this case was extended to December 31, 1926. The two waivers, one which dealt with the taxable year 1918, and

one which dealt with the taxable year 1919, each read as follows:

"In pursuance of the provisions of existing Internal Revenue Laws William C. Atwater & Company, Inc., a taxpayer of New York, N. Y. and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year (or years) 1919 under existing revenue acts, or under prior revenue acts.

"This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926, and shall then expire, except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

"William C. Atwater & Company, Inc.,
Taxpayer."

This document is called an income and profits tax waiver, and the point taken by the plaintiff is that the assessments above referred to in respect of its 1918 and 1919 tax years came too late for the reason that the notice of deficiency served on the plaintiff in respect of these two tax years was sent to the plaintiff by registered mail on the 31st of December, 1926.

It is claimed by the plaintiff that owing to the fact that this letter was not mailed to them until December 31st that it was beyond the stipulated time within which such a notice could be sent to it, and, hence, that there was not any extension whatever of the period within which the Commissioner could act, beyond, as they claim, midnight of December 30, 1926, that, consequently, it was as if nothing had been done by the government when in the following March the assessment was made.

III. I have already in the course of argument expressed my disagreement with this and I hold that the phrase "until December 31, 1926," includes all of that day.

That time is not limited by the provision contained later in the sentence with regard to the sending of a notice of deficiency to the taxpayer. What that part of the sentence means, I think, is that if a notice is sent before December 31st, even if no appeal is filed, the time shall be extended sixty days, because a notice of deficiency is, as has been explained to me, not a definite act on the part of the government, but a statement of the government's position, which is open to attack either by negotiation, or, if desired, by an appeal to the Board of Tax Appeals. Such being the case, it seems to me that the rationale of the provisions of the second paragraph above noted becomes quite clear, and that generally speaking it may be thus described:

Inasmuch as the notice of deficiency is interlocutory, as it were, and the assessment only is final, if a notice of deficiency is the course which the government takes, it is necessary for both parties, in fairness to both parties, to have an extension of the time during which an assessment may follow to enable them to have the necessary negotiations, or if an appeal be taken to await the decision of the United States Board of Tax Appeals.

I think that this construction is supported by the decision of Judge Nields in Remington-Rand, Inc., v. United States (D. C.) 57 F.(2d) 1069, 1070, although in that case some of the questions raised in this case do not seem to have been argued, and whilst I agree with everything he has there said, I have added some more reasons of my own which have seemed to be appropriate additions to the points he there mentioned.

It follows from my construction that, as the notice of deficiency was sent by registered mail on December 31, 1926, the taxpayer had sixty days within which to file an appeal with the Board of Tax Appeals, and during that period of sixty days there was an armistice between him and the Commissioner of Internal Revenue and the Commissioner could not act in making any assessment.

The Revenue Act of 1926, § 277 (b), title 26 United States Code, Supplement 1, § 1057 (b), 26 USCA § 1057 (b), provides that after the notice of deficiency, the running of the statute of limitations for the making of assessments in respect of any deficiency shall be suspended "for the period during which the Commissioner is prohibited from making the assessment * * * and for 60 days thereafter." In this case the suspension, therefore, ran from December 31, 1926, for a period of 120 days.

As a result, the final assessment made on March 19th was within the period of the extension thus accomplished by the contract involved in the waiver and the added provi-

918

sions of the statute law, which, being procedural and having come into force on February 26, 1926, governed the relations of the parties at the time when this assessment was made. That covers what to me was by far the most difficult question involved in this case. In this connection see, also, Mutual Lumber Company v. Poe, 44 F.(2d) 922, 923 (C. C. A. 9).

IV. The other question involved is of the construction of the contract of compromise which was arrived at on June 25, 1927, by the acceptance on behalf of the Commissioner of Internal Revenue of an offer made by the plaintiff to settle its liabilities for unpaid balance of income and profits tax assessed for the year 1917 in the sum of $83,-757.67, plus interest.

It is stipulated there were no questions of penalties involved herein. I am told by counsel, and I have accepted it as true, that at this time there was an appeal pending before the Board of Tax Appeals.

In making this settlement the plaintiff stoutly maintained that he was not liable and accompanied his offer by argument to that effect. What really happened was that having this controversy with the government involving a claim by the government for an $83,757.67 tax assessed for the year 1917, plus interest, they succeeded in making a settlement for $30,000, which was less than the principal sum of the tax assessed.

Counsel for the plaintiff most earnestly presses me to make an allocation between the principal of the tax and the interest, and as a result to allow him a recovery in respect of his 1918 and 1919 assessments, on the ground that these assessments did not take into consideration the fact that the settlement made as aforesaid was a settlement of the tax plus interest, but wrongly dealt with this payment of the $30,000 only as part of the principal of the tax.

V. I find no basis for making such a differentiation. I think that a lump sum was paid to escape a liability which was in litigation. I cannot imagine how in such circumstances I should be justified in splitting up the lump sum so paid and allocating a part of it to tax principal and a part of it to the interest thereon.

As a matter of fact, it would not be very realistic, because what really happened was that the plaintiff settled this tax claim of the government plus the interest which the government was claiming by paying somewhat slightly over a third of the tax.

Why a court under such circumstances should begin to pick the settlement to pieces and say that this dollar went to interest and this dollar went to taxes is difficult for me to see, and I refuse to do so.

As a result, therefore, an order for judgment may be presented to me providing for a judgment in favor of the defendant herein with costs.