\*ROBBINS TIRE AND RUBBER COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2287–67.   Filed June 12, 1969.

*Charles A. Poellnitz* and *James C. Herndon,* for the petitioner.
*Robert T. Hoffman,* for the respondent.

---

\*Supplemental opinion appears at 53 T.C. 275.

422

424

426

## OPINION

In 1964 petitioner and respondent entered into a comprehensive agreement to settle certain of petitioner's liabilities for taxes, penalties, and interest for prior years. During the taxable year 1964 petitioner made payments pursuant to two offers in compromise and a collateral agreement, in a sum less than the aggregate amount of the compromised taxes and penalties. The issue is whether, as a result of the settlement, petitioner is entitled to any deduction under section 163(a)[11] for the taxable year 1964 for interest paid or accrued.

[11] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

Petitioner contends that each payment constituted interest "in the proportion that the total interest liability compromised bears to the total liability for taxes, penalties and interest which was compromised." Thus petitioner would have us conclude that it is entitled to a deduction for the taxable year 1964 for interest paid under the offers in the amount of $288,492.25,[12] and for interest paid under the collateral agreement in the amount of $6.96. Alternatively, petitioner argues that since the compromised liabilities were being contested when the settlement was reached, the interest portion thereof became fixed and determined at that time, not before; and that consequently, it is entitled to accrue for the taxable year 1964 a deduction either (1) of $412,383.74,[13] as the interest portion of the total amount of the offers; or (2) of $4,534,851.16, representing the aggregate amount of the interest liabilities compromised.

Respondent maintains that no portion of the payments constituted interest, either paid or accrued, because the payments were less in amount than the compromised taxes and penalties, exclusive of interest. The foundation of respondent's position is I.T. 3852, 1947-1 C.B. 15, which states, in part, the following:

In the case under consideration deficiencies in Federal income tax, together with penalties and interest thereon, were determined to be due. Thereafter, the taxpayer submitted an offer in compromise of his tax liability, penalties, and interest in a *lump sum* less than the principal amount of the deficiencies, which offer was accepted by the Government. The taxpayer desires to apportion a part of the total payment to interest and deduct it in determining his net income.

\*　　　\*　·　　\*　　　\*　　　\*　　　\*　　　\*

It is the position of the Bureau, however, that the acceptance of a *lump sum* in compromise of Federal income tax, penalties, and interest does not result in payment of income tax, penalties, or interest, but is in lieu of liability therefor. Accordingly, in the instant case, no part of the amount accepted by the Govern-

---

[12] This amount is computed as follows:

| Type of offer | Amount paid on offer | Percent, interest factor | Amount of interest |
| --- | --- | --- | --- |
| Income tax | $362,226.39 | 41.989 | $152,095.24 |
| Excise tax | 296,367.05 | 46.023 | 136,397.01 |
| Total | 658,593.44 | | 288,492.25 |

[13] This figure is computed as follows:

| Type of offer | Amount of offer | Percent, interest factor | Amount of interest |
| --- | --- | --- | --- |
| Income tax | $517,782.63 | 41.989 | $217,411.75 |
| Excise tax | 423,640.34 | 46.023 | 194,971.99 |
| Total | 941,422.97 | | 412,383.74 |

ment from the taxpayer in compromise of the proposed income tax deficiencies, plus penalties and interest thereon, may be deducted as interest under section 23(b) of the Internal Revenue Code, supra. (Cf. *Max Thomas Davis et al.* v. *Commissioner*, 46 B.T.A., 663, acquiescence, C.B. 1942–1, 4, which is clearly distinguishable on the facts involved therein.) [Emphasis added.]

Also see Rev. Rul. 58–239, 1958–1 C.B. 94. The reasoning of I.T. 3852 has been applied in *William Justin Petit*, 8 T.C. 228, 236 (1947), and *William C. Atwater & Co.* v. *Bowers*, 5 F. Supp. 916 (S.D.N.Y. 1934), reversed on other issues 74 F. 2d 253 (C.A. 2, 1934). Cf. *Eagle Asbestos & Packing Co.* v. *United States*, 172 Ct. Cl. 304, 348 F. 2d 528, 532 (1965).

It is obvious that in order for the principles stated in I.T. 3852 to be applicable there must first be a "lump sum" compromise. But the settlement here involved more than a "lump sum" payment. In addition to the conditions and restrictions contained in the two offers in compromise, the settlement included:

(1) Execution of a collateral agreement under which petitioner obligated itself for the 10 succeeding taxable years to pay certain specified percentages of its "annual income," waived the right to contest the compromised liabilities, waived the benefit of net operating loss carryovers for prior years and net operating loss carryovers and carrybacks for the 10 years covered by the agreement, waived the benefit of all statutes of limitations on the assessment and collection of the compromised liabilities, agreed to adjustments in the basis of its assets, and made other concessions;

(2) Amendment of the trust agreement of November 1, 1956;

(3) Payment in full of the income tax liabilities for the taxable years 1952 through 1956, effected partially by reallocation of a portion of petitioner's prior payments which had been credited against its excise tax liabilities;

(4) Withdrawal by petitioner of all claims for refund, amounting to more than $1,200,000, and waiver of the right to file further claims for refund for the years covered by the offers in compromise;

(5) Entry of stipulated decisions in proceedings then pending before this Court (see Table I), whereby petitioner agreed to assessment of all income tax liabilities, including penalties and interest, for the taxable years 1942 through 1963; and

(6) Payment by Florco of $246,450 to compromise its income tax liability as transferee of petitioner's assets.

All of these transactions were conditioned upon acceptance by respondent of petitioner's offers, and were significant ingredients of the settlement. This multifaceted agreement cannot be equated with the "lump sum" compromise described in I.T. 3852, see *J. Harold Finen*, 41 T.C. 557, 561 fn. 2 (1964), acq. 1964–2 C.B. 5, and that ruling, therefore, is inapplicable to the present case.

Respondent, however, has other arrows in his quiver. He contends that acceptance of the offers extinguished the compromised liabilities for taxes, penalties, and interest—which thereupon lost their identity as such—and substituted therefor a new contractual liability, *Big Diamond Mills Co.* v. *United States*, 51 F. 2d 721, 725 (C.A. 8, 1931); and that payments in satisfaction of this contractual obligation cannot in any part be said to include interest. But this Court rejected a similar contention in *J. Harold Finen*, *supra* at 560, 561, where a collateral agreement similar to the present one was involved, stating:

Petitioners' liability for the unpaid * * * deficiencies in tax, penalties, and interest was not extinguished by the payment * * * [under the offer in compromise]. The Commissioner's argument to the contrary appears to be based on the erroneous premise that the compromise agreement was confined to the terms of the offer in compromise submitted on standard Treasury Form 656–C. But the terms of the compromise agreement accepted by the Commissioner were contained in two documents, the "Offer in Compromise" on Form 656–C and the collateral agreement. * * *

\* \* \* \* \* \* \*

Plainly, petitioners were not released from their unpaid liability for tax, penalties, and interest by the payment * * *. It was the intention of the parties that petitioners would continue to make payments in satisfaction of that liability pursuant to the terms of the collateral agreement. * * * [14]

Also see *United States* v. *Feinberg*, 372 F. 2d 352, 356 (C.A. 3, 1967); *Lustig* v. *United States*, 134 Ct. Cl. 351, 138 F. Supp. 870, 873 (1956). In addition, acceptance of respondent's "substituted contractual obligation" theory would render meaningless many of the provisions of the offers in compromise and the collateral agreement. See, e.g., paragraphs 3(b), 4, and 6 of the offers, and paragraphs 6, 7, and 8 of the collateral agreement, all quoted in our findings.

For petitioner to prevail, however, it must prove that "the amount of interest is ascertainable from the agreement or the circumstances surrounding the agreement." *Id.; J. Harold Finen, supra; Max Thomas Davis*, 46 B.T.A. 663 (1942), acq. 1942–1 C.B. 4. In addition, since petitioner is an accrual basis taxpayer, it has the further burden of showing what part, if any, of the ascertainable interest accrued in its taxable year 1964. We believe petitioner has made the requisite showing for an interest deduction to be computed in the manner discussed below.

In reaching this conclusion we begin with the principle that a compromise is a contract and thus is a proper subject of judicial in-

---

[14] Thus, respondent's argument that the amendment of par. (3)(a) of the trust agreement of Nov. 1, 1956—deleting the specific provision for the application of the monthly payments to taxes, interest, and penalty in that order—"*implies* that the parties understood the payments on the offers were payments on substituted liabilities and not the payment of tax, penalty or interest," is without merit. Also see the discussion below of Rev. Rul. 58–239, 1958–1 C.B. 94.

terpretation as to its meaning, in the light of the language used and the circumstances surrounding its execution. *Colorado Milling & Elevator Co.* v. *Howbert*, 57 F. 2d 769, 771 (C.A. 10, 1932); *Big Diamond Mills Co.* v. *United States, supra* at 724; *Max Thomas Davis, supra* at 671.

None of the various documents embodying the overall contract of settlement refers specifically to the manner in which petitioner's payments are to be credited against its various liabilities. Paragraph (3) (a) of the original trust agreement had provided that the monthly payments of $10,000 "shall be applied by the District Director, first, to any assessed excise tax liability of Taxpayer, second, to any asserted income tax liability of Taxpayer, third, to any interest on said excise tax liability, fourth, to interest on any asserted income tax liability, and lastly, to any penalties determined to be due." However, the amended trust agreement eliminated this method of applying the monthly payments, and provided only that the $10,000 monthly payments be continued and that 45 percent of such payments be applied by the district director "to the payment of the excise tax offer * * * and the remaining fifty five per cent (55%) to the income tax offer * * * until said offers are paid."

The offers in compromise and the collateral agreement provided that, in the event of default by petitioner in the payment of any installment of principal or interest due thereunder, respondent could: (1) Proceed immediately by suit to collect the entire balance due under the offers and the collateral agreement; (2) proceed immediately by suit to collect as liquidated damages an amount equal to "the liability sought to be compromised" minus any payments already received under the offers and the collateral agreement, together with interest; or (3) disregard the amounts of the offers and the collateral agreement and apply all amounts paid thereunder against the amount of the liability sought to be compromised and "assess and/or collect by levy or suit * * * the balance of such liability." [15] Furthermore, paragraph 6 of the collateral agreement provided "That the aggregate amount paid in accordance with the terms of the offers and the additional amounts paid under the terms of this agreement shall not exceed the liability covered by the offers in compromise plus accrued interest that would become due in the absence of the compromise."

These provisions clearly contemplate that payments made under the offers and the collateral agreement are to be credited against the

---

[15] The validity of agreements containing almost identical terms has been sustained in *United States* v. *Lane*, 303 F. 2d 1, 4 (C.A. 5, 1962), and *United States* v. *Feinberg*, 372 F. 2d 352, 358 (C.A. 3, 1967).

compromised taxes, penalties, and interest in accordance with some specific procedure; otherwise, there would be no way of computing the respective amounts of taxes, penalties, and interest remaining due in case of default by petitioner and respondent's exercise of either the second or the third remedies above, or of ascertaining the maximum amounts payable under the collateral agreement, i.e., the compromised liabilities plus the "accrued interest that would become due in the absence of the compromise." Some method of applying the credits was obviously contemplated because the statutory rules prescribing interest on taxes, penalties, and interest are each distinctive.[16]

Petitioner insists that an allocation should be made in proportion to the amounts of taxes, penalties, and interest which were compromised, computed as of the date of the settlement. But nothing in the agreements supports such an allocation. Consequently, we must look elsewhere to determine the method of applying petitioner's payments against its compromised liabilities.

The procedure employed by the Internal Revenue Service in cases where a taxpayer tenders partial payments on his tax liabilities and gives no instructions as to how such payments shall be applied, is stated in Rev. Rul. 58–239, 1958–1 C.B. 94, 95, as follows:

Where an assessment is made for one or more years and there are no specific instructions as to the application of the partial payment tendered by the taxpayer, the amount of the payment will be applied by the District Director first to tax, penalty and interest, in that order, for the earliest year, then to tax, penalty and interest, in that order, for the next succeeding year, until the payment is absorbed. * * *

Amounts tendered, in partial payment of deficiencies mutually agreed to as to the amount of liability but unassessed at the time of the tender, for one or more years, without instructions from the taxpayer, as to the application of

---

[16] SEC. 6601. INTEREST ON UNDERPAYMENT, NONPAYMENT, OR EXTENSIONS OF TIME FOR PAYMENT OF TAX.

(a) GENERAL RULE.—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid.

\*  \*  \*  \*  \*  \*  \*

(f) APPLICABLE RULES.—Except as otherwise provided in this title—

(1) INTEREST TREATED AS TAX.—Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

(2) NO INTEREST ON INTEREST.—No interest under this section shall be imposed on the interest provided by this section.

(3) INTEREST ON PENALTIES, ADDITIONAL AMOUNTS, OR ADDITIONS TO THE TAX.— Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax only if such assessable penalty, additional amount, or addition to the tax is not paid within 10 days from the date of notice and demand therefor, and in such case interest shall be imposed only for the period from the date of the notice and demand to the date of payment.

the payment, will be applied by the District Director first to tax, penalty and interest, in that order, due for the earliest year, the interest to be computed under the applicable provisions of law, then to tax, penalty and interest, in that order, for the next succeeding year until the payment is absorbed. * * * The portion of the payment applied to interest for any year will be deductible in computing taxable income for the year in which the partial payment is made. * * *[17]

In the circumstances of this case it is reasonable to construe the settlement documents, as a whole, to provide for the application of petitioner's payments in accordance with the procedure prescribed by Rev. Rul. 58-239. Specific crediting procedures had been set forth in paragraph (3)(a) of the November 1, 1956, trust agreement; in the period between the date of that agreement and the negotiation of the final settlement, Rev. Rul. 58-239 was issued and thereby became the established procedure of the Internal Revenue Service.[18] As a part of the settlement the trust agreement was amended to eliminate paragraph (3)(a). The officials of the Service who negotiated the settlement were presumably aware of the procedure set forth in Rev. Rul. 58-239, and they obviously dictated many of the terms of the settlement with the distressed taxpayer. Representatives of petitioner, who had been in communication with the Service almost continuously over a period of years in a protracted effort to adjust petitioner's tax liabilities, were also likely to have been aware of that procedure. Finally, the compromise offers were submitted on the standard Form 656 (rev. 7-57), prescribed by the Service for general use in submitting offers in compromise. Rev. Proc. 57-41, 1957-2 C.B. 1119; sec. 601.203(b), Proced. Rules. A reasonable inference is that the crediting of payments required by the agreement was to be made in accordance with the standard practice of the Service.[19]

In determining the amount of the payments deductible as interest by petitioner in its taxable year 1964, we turn to the basic rule applicable under the accrual method of accounting—"an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be deter-

[17] Although this ruling is directed to the right of a cash basis taxpayer to deduct portions of payments made against prior tax liabilities, we think it quite clear that the procedure established therein for crediting partial payments would be the same for an accrual basis taxpayer.

[18] In *James F. Keith,* 35 T.C. 1130, 1139 fn. 9 (1961), commenting on Rev. Rul. 58-239, this Court stated: "We know of no published procedure relative to this matter prior to 1958, and it is our understanding that the application was left up to the individual district director." Cf. *John A. Amos,* 47 T.C. 65, 69 fn. 4 (1966).

[19] Respondent places great reliance on *J. Harold Finen,* 41 T.C. 557 (1964). The negotiations and agreement compromising the tax liabilities of the taxpayer in *Finen* took place prior to the issuance of Rev. Rul. 58-239. Consequently, no specific crediting procedure could have been mutually contemplated by the parties therein. See fn. 18; *supra.* Furthermore, the opinion in *Finen* was not required to reach the question presented here because of the taxpayer's abandonment of his claims for interest deductions in the earlier years.

mined with reasonable accuracy." Sec. 1.461–1(a)(2), Income Tax Regs.; *Dixie Pine Co.* v. *Commissioner*, 320 U.S. 516 (1944); *Lehigh Valley Railroad Co.*, 12 T.C. 977, 995 (1949). As applied to the facts of this case, this rule requires that petitioner's accruals of deductible interest be measured by the payments it made.

Since the compromised liabilities, with one exception noted in the footnote below, were being contested when the settlement agreement was reached,[20] see sec. 1.461–2(b)(2), Income Tax Regs.; [21] *Dixie Pine Co.* v. *Commissioner, supra; Gunderson Bros. Engineering Corp.*, 16 T.C. 118, 126 (1951), we agree with petitioner that they could not have accrued prior thereto. *Lehigh Valley Railroad Co., supra* at 997. However, we cannot agree that the interest portion of those liabilities or of the full amount of the offers became fixed and determined during the taxable year 1964, because the settlement agreement did not determine "with reasonable accuracy" the amount of the interest liability which would be discharged by petitioner.

While petitioner agreed that upon notice of acceptance of the offers in compromise it should "have no right to contest in court or otherwise the amount of the liability sought to be compromised," see *United States* v. *Feinberg, supra* at 358–359, and *United States* v. *Lane*, 303 F. 2d 1, 4 (C.A. 5, 1962), thus fixing that amount as its *maximum* liability, the amount it would ultimately pay was rendered uncertain by the installment provisions of the compromise offers and the annual payments under the collateral agreement. Only its *minimum* liability, i.e., the amount paid, was fixed by the close of the taxable year 1964. We recognize, of course, that the fact of payment normally does not control the accruability of an otherwise accruable expense. *United States* v. *Anderson*, 269 U.S. 422 (1926). But even if the total installments under the compromise offers are

---

[20] Petitioner contested all its liabilities for income and excess profits taxes, and penalties and interest thereon, and its liabilities for excise taxes, penalties, and interest, with the exception of the excise taxes assessed for Aug. 1, 1952, to Sept. 30, 1953, and the amounts assessed on Nov. 27, 1959, and Jan. 12, 1961. See Tables I and III.

[21] Sec. 1.461–2 Timing of deductions in certain cases where asserted liabilities are contested.

(b) *Contest of asserted liability.*—* * *

(2) *Definition of the term "contest."* Any contest which would prevent accrual of a liability under section 461(a) shall be considered to be a contest in determining whether the taxpayer satisfies paragraph (a)(1)(i) of this section. A contest arises when there is a bona fide dispute as to the proper evaluation of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability. It is not necessary to institute suit in a court of law in order to contest an asserted liability. An affirmative act denying the validity or accuracy, or both, of an asserted liability to the person who is asserting such liability, such as including a written protest with payment of the asserted liability, is sufficient to commence a contest. Thus, lodging a protest in accordance with local law is sufficient to contest an asserted liability for taxes. It is not necessary that the affirmative act denying the validity or accuracy, or both, of an asserted liability be in writing if, upon examination of all the facts and circumstances, it can be established to the satisfaction of the Commissioner that a liability has been asserted and contested.

440

treated as a fixed obligation, the amounts attributable to discharge of interest liabilities could not be determined until the payments were actually tendered and credited to the tax, penalty, and interest in each year, thereby fixing the amount of interest accrued on the discharged amounts. Stated another way, since interest on the unpaid liabilities continues to accrue until the date of *payment*, sections 6601 (a) and (f)(3), the amount of interest which is discharged by application of the procedure of Rev. Rul. 58–239, cannot be "determined with reasonable accuracy" until actual payment is made. In these circumstances petitioner's interest deduction for the taxable year 1964 is limited to the interest portion of the payments it made during that year.

In summary, we hold that the payments made under the November 1, 1956, trust agreement prior to its amendment should be credited in accordance with paragraph (3)(a) thereof, subject, however, to the reallocation of such payments to discharge petitioner's liability for income tax, penalties, and interest for the taxable years 1952 through 1956. As conceded by respondent, petitioner is entitled to a deduction of $540,002.16 for interest paid in the taxable year 1964 on such liabilities. All payments made pursuant to the offers in compromise and the collateral agreement should be credited, when paid, in accordance with Rev. Rul. 58–239 against the balance remaining due, 45 percent to be applied to excise taxes, penalties, and interest, and 55 percent to income and excess profits taxes, penalties, and interest. The amounts thus applied to interest liabilities of prior years are deductible by petitioner under section 163(a) for the taxable year 1964.

*Decision will be entered under Rule 50.*