T.C. Memo. 1996-515


UNITED STATES TAX COURT


SHORTHORN GENETIC ENGINEERING 1982-2, LTD., SHORTHORN GENETIC
ENGINEERING 1982-4, LTD., SHORTHORN GENETIC ENGINEERING 1982-5,
LTD., WALTER J. HOYT III, TAX MATTERS PARTNER, ET AL.,[1]
Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 22003-89,    22008-89,    Filed November 20, 1996.
            22069-89,    22070-89,
            24514-89,    27641-89,
            27675-89,    28383-89,
            28384-89,    28491-89,
            28492-89,    29260-89,
            29295-89,    29854-89,
            29855-89,    29856-89,
            30478-89,    30479-89,
            20224-90,    21463-90,
            21954-90,    23531-90,
            28577-90.

---

[1]    The following cases are consolidated herewith:  Shorthorn Genetic
Engineering 1982-2, Ltd., Shorthorn Genetic Engineering 1982-4, Ltd.,
Shorthorn Genetic Engineering 1982-5, Ltd., Walter J. Hoyt III, Tax Matters
Partner, docket No. 22008-89; Shorthorn Genetic Engineering 1985-1, Ltd.,
Shorthorn Genetic Engineering 1985-2, Ltd., Shorthorn Genetic Engineering
1985-3, Ltd., Shorthorn Genetic Engineering 1985-4, Ltd., Shorthorn Genetic
Engineering 1985-5, Ltd., Shorthorn Genetic Engineering 1982-2, Ltd.,
Shorthorn Genetic Engineering 1982-4, Ltd., Shorthorn Genetic Engineering
1982-5, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 22069-89;
Durham Genetic Engineering 1985-1, Ltd., Durham Genetic Engineering 1985-2,
Ltd., Durham Genetic Engineering 1985-3, Ltd., Durham Genetic Engineering
1985-4, Ltd., Durham Genetic Engineering 1985-5, Ltd., Walter J. Hoyt III, Tax
Matters Partner, docket No. 22070-89; Shorthorn Genetic Engineering 1984-3,
Ltd., Shorthorn Genetic Engineering 1985-5, Ltd.,  Walter J. Hoyt III, Tax
Matters Partner, docket No. 24514-89; Timeshare Breeding Service 1984-4, Ltd.,
Walter J. Hoyt III, Tax Matters Partner, docket No. 27641-89; Shorthorn
Genetic Engineering 1984-1, Ltd., Shorthorn Genetic Engineering 1984-5, Ltd.,
Walter J. Hoyt III, Tax Matters Partner, docket No. 27675-89; Shorthorn
Genetic Engineering 1982-3, Ltd., Shorthorn Genetic Engineering, 1983-1, Ltd.,
Walter J. Hoyt III, Tax Matters Partner, docket No. 28383-89; Shorthorn
Genetic Engineering 1983-1, Ltd., Walter J. Hoyt III, Tax Matters Partner,
docket No. 28384-89; Timeshare Breeding Service 1983-2, Ltd., Timeshare
Breeding Service 1983-3, Ltd., Timeshare Breeding Service 1984-1, Ltd.,
Timeshare Breeding Service 1984-2, Ltd., Timeshare Breeding Service 1984-3,
Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 28491-89; Timeshare
Breeding Service 1983-2, Ltd., Timeshare Breeding Service 1983-3, Ltd.,
Timeshare Breeding Service 1984-1, Ltd., Timeshare Breeding Service 1984-2,
Ltd., Timeshare Breeding Service 1984-3, Ltd., Walter J. Hoyt III, Tax Matters

Partner, docket No. 28492-89; Shorthorn Genetic Engineering 1984-2, Ltd.,
Shorthorn Genetic Engineering 1983-2, Ltd., Shorthorn Genetic Engineering
1982-1, Ltd., Shorthorn Genetic Engineering 1984-4, Ltd., Walter

(continued...)

Walter J. Hoyt III (tax matters partner), pro se.

Gary L. Blackburn (participant other than tax matters partner), pro se.

Margaret A. Martin, for respondent.

---

[1](...continued)
J. Hoyt III, Tax Matters Partner, docket No. 29260-89; Shorthorn Genetic
Engineering 1983-3, Ltd., Shorthorn Genetic Engineering 1984-2, Ltd.,
Shorthorn Genetic Engineering 1983-2, Ltd., Shorthorn Genetic Engineering
1982-1, Ltd., Shorthorn Genetic Engineering 1984-4, Ltd., Walter J. Hoyt III,
Tax Matters Partner, docket No. 29295-89; Shorthorn Genetic Engineering, 1983-
2, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 29854-89;
Shorthorn Genetic Engineering, 1983-3, Ltd., Walter J. Hoyt III, Tax Matters
Partner, docket No. 29855-89; Shorthorn Genetic Engineering, 1983-3, Ltd.,
Walter J. Hoyt III, Tax Matters Partner, docket No. 29856-89; Shorthorn
Genetic Engineering, 1982-1, Ltd., Walter J. Hoyt III, Tax Matters Partner,
docket No. 30478-89; Timeshare Breeding Service No. 2, Ltd., Timeshare
Breeding Service No. 3, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket
No. 30479-89; Shorthorn Genetic Engineering 1982-1, Ltd., Shorthorn Genetic
Engineering 1982-2, Ltd., Shorthorn Genetic Engineering 1982-3, Ltd.,
Shorthorn Genetic Engineering 1982-4, Ltd., Shorthorn Genetic Engineering
1982-5, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 20224-90;
Shorthorn Genetic Engineering 1983-1, Ltd., Shorthorn Genetic Engineering
1983-2, Ltd., Shorthorn Genetic Engineering 1983-3, Ltd., Shorthorn Genetic
Engineering 1984-1, Ltd., Shorthorn Genetic Engineering 1984-2, Ltd.,
Shorthorn Genetic Engineering 1984-3, Ltd., Shorthorn Genetic Engineering
1984-4, Ltd., Shorthorn Genetic Engineering, 1984-5, Ltd., Walter J. Hoyt III,
Tax Matters Partner, docket No. 21463-90; Shorthorn Genetic Engineering 1985-
1, Ltd., Shorthorn Genetic Engineering 1985-2, Ltd., Shorthorn Genetic
Engineering 1985-3, Ltd., Shorthorn Genetic Engineering 1985-4, Ltd.,
Shorthorn Genetic Engineering 1985-5, Ltd., Walter J. Hoyt III, Tax Matters

Partner, docket No. 21954-90; Durham Genetic Engineering 1983-2, Ltd., Durham Genetic Engineering 1983-3, Ltd., Durham Genetic Engineering 1984-1, Ltd., Durham Genetic Engineering 1984-2, Ltd., Durham Genetic Engineering 1984-3, Ltd., Durham Genetic Engineering 1984-4, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 23531-90; Durham Genetic Engineering 1985-1, Ltd., Durham Genetic Engineering 1985-2, Ltd., Durham Genetic Engineering 1985-3, Ltd., Durham Genetic Engineering 1985-4, Ltd., Durham Genetic Engineering 1985-5, Ltd., Walter J. Hoyt III, Tax Matters Partner, docket No. 28577-90.

## MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge:  These consolidated cases were assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules 180, 181, and 183.[2]  The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge:  Respondent issued a notice of final partnership administrative adjustments to each limited partnership involved in these consolidated cases, determining adjustments in the amounts and for the tax years as set forth in the Appendix.

Walter J. Hoyt III (petitioner), the tax matters partner for each limited partnership (referred to collectively as partnerships) involved herein, filed a petition for redetermination of the partnership adjustments.  All issues, except one, have been settled by stipulations so that the only remaining issue for decision is the proper allocation of partnership items to the partners to be calculated in accordance with a settlement agreement dated May 20, 1993, entered into between Walter J. Hoyt III, and respondent's Sacramento,

California, Appeals Office. At trial, respondent submitted a proposed decision document in each case and moved for summary judgment. If we find that respondent's method for

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

calculating the allocations is proper, then the parties agree that the amounts shown on the proposed decision documents are correct.

This Court had previously considered the tax consequences of the Hoyt family cattle breeding operations in Bales v. Commissioner, T.C. Memo. 1989-568. As a result of our opinion in Bales v. Commissioner, supra, on May 20, 1993, Walter J. Hoyt III, the general partner and tax matters partner, entered into the settlement with respondent's Sacramento, California, Appeals Office, setting forth the basis for settling all Hoyt cattle partnership cases for the taxable years 1980 through 1986.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated by this reference.

All the partnerships are limited partnerships formed to engage in the business of cattle breeding. The partnerships were

organized under the laws of the States of California and Nevada. The limited partners obtained interests in the partnerships by executing subscription agreements.

The partnerships purchased the cattle used in their breeding operations from Hoyt & Sons Ranches (Ranches). In payment for the cattle purchased, the partnerships executed promissory notes to Ranches. Thereafter, the partners signed assumption of liability agreements, thereby assuming personal liability for these recourse partnership liabilities. Principal payments on the notes became due starting in the sixth year after the notes were executed.

Pursuant to the settlement agreement (the agreement), the numbers of cattle deemed to be held by the partnerships were reduced. Accordingly, the amount of principal on each of the notes payable to Ranches was treated as reduced. The agreement provides that this new principal amount is the amount of partnership debt to be treated as personally assumed by the partners.

The agreement further provides:

Each partner's profit and loss sharing percentage is determined annually by comparing the partner's capital account to the aggregate of the capital accounts of all partners in the partnership. This determination is made based on the total capital owned, not the total capital originally subscribed.

\* \* \* \* \* \* \*

> The amount of liabilities assumed personally by the partners during the first year of the partnership will be based on original subscription agreements, and will be provided by Walter J. Hoyt within one week after the partnership spreadsheet is submitted to him for review and/or correction.

\* \* \* \* \* \* \*

> All partners who originally assumed personal liability for a portion of the partnership debt during the first year of the partnership -- whether they are now determined to be active or inactive partners -- will be assigned a share of the lower amount of recognized partnership debt described above. Each partner's share will be the exact same percentage as his/her share of the partnership debt originally assumed.

The agreement defines active partners as those who continue to honor their obligations to Ranches and continue to participate in the partnership and inactive partners as those who have walked away from their note obligations and/or no longer participate in the partnership.

As an alternative, respondent made a settlement offer to the partners on an individual basis. The terms of the offer provided generally that a partner who accepted would be allowed a deduction for any cash paid to the "Hoyt Organization" in the year of payment. The partner would not be allowed any other deductions or credits nor be required to recognize any income related to the partnerships. The record does not indicate how many partners accepted this settlement offer (referred to as the out-of-pocket settlement).

Respondent's spreadsheets calculating the partners'

interests in the partnerships have been stipulated and have been received into evidence. For the first year, respondent allocated a portion of the partnership debt, which consisted of the reduced amount of the notes to Ranches, to each of the partners who assumed personal liability. The allocation was based on the original percentages of partnership liabilities assumed as reflected in the partnership books and records. The resulting amounts represented each partner's beginning capital account balance. Each year respondent adjusted these balances for actual capital contributions made to the partnership and increases and decreases in liabilities assumed. These adjusted balances were used to determine the proportionate share of partnership items to be allocated to each partner. The capital account balances were then adjusted to reflect the partnership items so allocated and these balances were carried over to the next year.

All of the partners included in respondent's proposed decision documents had personally assumed partnership liabilities as reflected in the partnership books and records and on the Federal income tax returns filed by the partnerships throughout the taxable years at issue. Furthermore, petitioner agrees that respondent's calculations are consistent with the books and records of the partnerships.

Several documents relating to one of the partnerships, Shorthorn Genetic Engineering 1984-5, have also been stipulated

and received into evidence.  The partnership was organized as a limited partnership under the laws of the State of California. The partnership agreement was filed with the Office of the Secretary of State for California on July 18, 1984.

The partnership agreement provides in pertinent part:

Look-back Provision.  * * * Due to the uncertainties of the cattle breeding business, the ability of all Limited Partners to meet their obligations under this Agreement and any other unforeseen future events the General Partner will require a certain flexibility in conducting the financial affairs and establishing the business of the Partnership. Therefore, it is mutually agreed that such Partners['] permanent pro rata share of Partnership capital, income, losses, credits, and distributions will be determined on December 31, 1988 and at the end of the Investment Period.

Each Partner will be liable to return cash to the Partnership, without interest, to the extent necessary, to equalize the amount of loss, gain, distributions and credits that exceed the amount that is determined to be their [sic] correct share of these items at the end of the investment period.

                *    *    *    *    *    *    *

Remedies.  The right to expel any Limited Partner who may fail of use [sic] to pay into the capital of the Partnership any portion of his subscription within thirty (30) days after its due date, or who may attempt to participate in or interfere in any way with the management of the Partnership's affairs, is hereby expressly reserved to the General Partner in his sole discretion. * * * The defaulting Limited Partner may be expelled from the Partnership in which case he will be entitled to the amount in his capital account, determined on a cash basis, as of the end of the [preceding] fiscal year after deduction therefrom for any amount dues and owing to the Partnership for any unpaid assessments of the expelled Limited Partner, and for each succeeding assessment as it becomes due.

A Limited Partner who defaults or voluntarily withdraws from the Partnership will be entitled to the amount in his

capital account, only upon complete liquidation of all Partnership assets, less any amount of future unpaid assessments.

The partnership agreement was amended in February 1987. Under the amended agreement, Shorthorn Genetic Engineering 1984-5 was reformed as Shorthorn Genetic Engineering 1984-5, J.V., and the partnership was to operate as a general partnership under the laws of the State of Nevada.

OPINION

Given the disposition of the issue on the merits discussed below, we do not find it necessary to address respondent's motions for summary judgment, and they will be denied.

When a petition for readjustment of partnership items has been filed properly, this Court has jurisdiction to decide all of the partnership items of the partnership and the proper allocation of these items to the partners for the partnership taxable year at issue. Sec. 6226(f). Partnership items are those items required to be taken into account for the partnership's taxable year under subtitle A which are to the extent provided by the regulations "more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3). The regulations provide that such items include:

> (1) The partnership aggregate and each partner's share of each of the following:
>   (i) Items of income, gain, loss, deduction, or credit of the partnership;

>      *     *     *     *     *     *     *

(v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and

\* \* \* \* \* \* \*

(4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:
(i) Contributions to the partnership;
(ii) Distributions from the partnership; and
(iii) Transactions to which section 707(a) applies (including the application of section 707(b)).

Sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs.

All partners who held an interest in the partnership for the taxable year at issue generally will be treated as parties to a partnership action. Sec. 6226(c). However, a partner is not a party if he or she does not have an interest in the outcome of the proceeding because such partner's partnership items have become nonpartnership items pursuant to subsection (b) of section 6231. Sec. 6226(d). A partner's partnership items will be treated as nonpartnership items as of the date on which the partner enters into a settlement agreement with the respondent with respect to such items. Sec. 6231(b)(1)(C). The classification of items as partnership or nonpartnership items is significant because the audit and litigation procedures provided in sections 6221 through 6230 apply to partnership items. Nonpartnership items are subject to the rules for judicial and

administrative resolution of the partner's tax liability and cannot be the subject of a partnership proceeding.  See, e.g., Maxwell v. Commissioner, 87 T.C. 783, 788-789 (1986).

Petitioner has made various arguments based on an assumption that respondent included partners who have accepted the out-of-pocket settlement in her calculations on which the proposed decision documents are based.  Petitioner bears the burden of proof in these cases.  Rule 142.  We begin by noting that there is no evidence in the record concerning partners who have accepted the out-of-pocket settlement.  Therefore, we have no indication that any such partners were included in respondent's calculations.  We will, however, further address petitioner's arguments.

Petitioner argues that the partnership income, losses, credits, and liabilities calculated pursuant to the settlement agreement should be allocated to a limited group of partners. Petitioner contends that any partners who have accepted the out-of-pocket settlement offer from respondent are not parties to this proceeding pursuant to section 6226.  Therefore, petitioner argues, the Court is prohibited from allocating partnership items to those partners because we do not have jurisdiction to do so. Petitioner also argues that pursuant to section 6231, the partnership items of the partners who have accepted the out-of-pocket settlement have been converted to nonpartnership items.

As a result, petitioner argues that these partners have no partnership interest.

Respondent argues that the Court has jurisdiction to determine the allocation of items at issue in these cases because the items are partnership items. Respondent contends that in order to determine the allocations to be made to the partners who have not settled on an individual basis, it is necessary for the Court to consider the capital accounts of all of the partners. Respondent argues that the provisions of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648 are procedural, and affect only the type of proceeding which may be brought, but do not alter the substantive law of partnerships. Thus, respondent argues, the provisions do not have the effect of removing partners from the partnership.

The items at issue fall within the definition of partnership items. The determination of the allocation of partnership items to the parties to this action requires that we consider the partnership aggregate of each item, including partnership capital. A partner's interest in each item is determined based on the share of total partnership capital contributed by the partner.

The effect of a partner's accepting the out-of-pocket settlement is that the partner and respondent have agreed on the treatment of the partner's share of partnership items for Federal

tax purposes. Under sections 6226 and 6231, such partner is not a party to this partnership action and is not bound by our determinations. However, the partner is still a party to the partnership agreement and retains his interest as partner in the partnership. Thus, the allocations of partnership items must be computed by including the interests of all partners, including any who have accepted the out-of-pocket settlement.

Petitioner also contends that by the terms of the partnership agreement, the tax matters partner has the authority to accept the out-of-pocket settlement on behalf of individual partners, that he has exercised such authority with respect to certain partners, and that these partners are no longer parties to this action. Because we have held that the status of the partners with respect to these cases does not affect our jurisdiction to determine the allocation of the partnership items above, we find no merit in this argument.

In the alternative, petitioner argues that the proper interpretation of the agreement supports his contention that the partnership items should be allocated to a limited number of partners.

A settlement agreement between respondent and a tax matters partner related to the determination of partnership items for any partnership taxable year is binding on the parties to the agreement with respect to the determination of partnership items

for such taxable year unless there is a showing of fraud, malfeasance, or misrepresentation of fact.  Sec. 6224(c).  A mistake of fact or law is not grounds for rescinding an agreement under section 6224.  Korff v. Commissioner, T.C. Memo. 1993-33. The proper meaning of the terms of an agreement is determined from language of the agreement and the circumstances surrounding its execution.  Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969).

First, petitioner asserts, on brief, that the Tax Matters Partner believed that, pursuant to the Code provisions, partners who settled on an individual basis should be excluded from allocations to be determined under the agreement because such partners are no longer parties to this action.

Respondent argues that even assuming that the Tax Matters Partner believed the calculations under the agreement would be made by applying its provisions only to the partners who are parties to this action, such belief is a mistake of law, and thus it does not preclude enforcement of the agreement.

Assertions made in briefs do not constitute evidence.  Rule 143(b).  There is no evidence on the record to support petitioner's assertion as to the belief of the Tax Matters Partner at the time the agreement was made.  Further, we agree with respondent that the Tax Matters Partner's asserted belief is mistaken, and, whether the mistake is of law or fact, it does not

preclude enforcement of the agreement.

In the alternative, petitioner argues that by its terms the agreement does not apply to partners who have settled with the respondent on an individual basis. Petitioner relies on the following language: "The primary purpose of this memorandum is to memorialize the bases we reached for settling all cases involving Hoyt partnerships for the years 1980 through 1986." Petitioner argues that the agreement therefore has no relevance for partners who are not parties to this action.

Again, we note, that there is no evidence in the record concerning the extent to which respondent's calculations include partners who have accepted the out-of-pocket settlement. In any event, we find that the language of the agreement providing for the calculation of the allocations of partnership liabilities and other items to the partners is clear. Each section refers to "the partners" or "all partners". Therefore, we find that inclusion of all partners in the calculations is appropriate.

In the alternative, petitioner argues that the terms of the partnership agreements control these allocations, and respondent's calculations are inconsistent with the requirements of the partnership agreements. Petitioner contends that the provisions of the partnership agreements require that partnership items be reallocated in accordance with the partner's real interests in the partnership. Petitioner argues that the

allocations of partnership items are to be made pursuant to the partnership agreements under section 704(a). Petitioner asserts that certain partners defaulted on the notes to Ranches. Petitioner contends that under the terms of the partnership agreement the interests of these partners have been terminated. Petitioner also contends that under the partnership agreement the defaulting partners are to be treated as having never assumed these obligations, and, therefore, they should not be allocated any share of the partnership liabilities under the agreement.

Petitioner's contentions are not supported by the evidence in the record. Petitioner has not produced any evidence that any partners defaulted on the notes.

Even if we were to find that partners defaulted on the notes, the original partnership agreement for Shorthorn Genetics Engineering 1984-5 does not support petitioner's argument. The partnership agreement contains a "look-back" provision, under which allocations of income, losses, and other items may be made to the partners' capital accounts at the end of the partnership's fifth year to adjust the prior allocations. For this partnership, these adjustments would not occur until sometime in 1989, after the taxable years at issue. We do not read this provision to provide that the partners never assumed the liability or to provide for retroactive allocations to prior years. In addition, the partnership agreement does not provide

that a limited partner may be expelled for defaulting on partnership obligations, much less that an expulsion would be retroactive to the beginning of the partnership.

Moreover, the settlement agreement expressly provides for the inclusion of partners who default on their note obligations to Ranches (inactive partners) in the original allocations of the partnership debt. The agreement is binding on the parties. Sec. 6224.

Petitioner also makes the following secondary arguments: (1) Various partners, by their actions or inactions, failed to abide by the provisions of the amended partnership agreement; therefore their interests have been terminated; (2) a large number of partners defaulted on the notes to Ranches in 1987, and their cattle have been repossessed; therefore these partners should not be allocated any partnership debt; and (3) certain partners terminated their interests in 1994 by letters alleging that the partnerships were terminated shortly after inception.

Respondent objected to any evidence of these purported actions or inactions as irrelevant because they were subsequent to the taxable years at issue.

Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Petitioner proffered evidence

of various livestock exhibitions, sales, and programs, letter writing campaigns from 1992 through 1994, and a management agreement between Shorthorn Genetic Engineering 1983 #3 and W.J. Hoyt Sons Management Co., Ltd., for years beginning with 1993, as well as termination of interest letters from partners written in 1994.  Petitioner has provided no explanation of the relevance of these documents to the taxable years at issue.  The evidence does not tend to show that any partners withdrew from or had their interests in any of the partnerships terminated during the taxable years at issue.  Respondent's objection is sustained.

The only evidence in the record that any cattle were repossessed is petitioner's own general testimony that cattle were repossessed.  Even if we believed that the cattle were repossessed by Ranches, the repossession occurred after the taxable years at issue, and is not relevant to these cases.

To reflect the foregoing,

<u>An appropriate order and decision</u>
<u>will be entered in each case</u>.

APPENDIX

| Docket No. | Partnership | Taxable Year Ending | Investment Tax Credit | Adjusgment Ordinary Income | Adjusgment Separately Stated Partnership Items |
|---|---|---|---|---|---|
| 22003-89 | Shorthorn Genetic Engineering 1982-2, Ltd. | 12/31/84 | $0 | $1,192,432 | $8,000 |
| | Shorthorn Genetic Engineering 1982-4, Ltd. | 12/31/84 | 0 | 1,273,246 | 14,000 |
| | Shorthorn Genetic Engineering 1982-5, Ltd. | 12/31/84 | 0 | 1,105,768 | 8,000 |
| 22008-89 | Shorthorn Genetic Engineering 1982-2, Ltd. | 12/31/83 | 0 | 1,539,763 | 0 |
| | Shorthorn Genetic Engineering 1982-4, Ltd. | 12/31/83 | 0 | 1,668,131 | 8,800 |
| | Shorthorn Genetic Engineering 1982-5, Ltd. | 12/31/83 | 0 | 1,397,701 | 18,870 |
| 22069-89 | Shorthorn Genetic Engineering 1985-1, Ltd. | 12/31/85 | 6,246,500 | 962,586 | 0 |
| | Shorthorn Genetic Engineering 1985-2, Ltd. | 12/31/85 | 5,969,680 | 1,075,594 | 0 |
| | Shorthorn Genetic Engineering 1985-3, Ltd. | 12/31/85 | 6,391,500 | 934,926 | 0 |
| | Shorthorn Genetic Engineering 1985-4, Ltd. | 12/31/85 | 6,060,480 | 1,152,251 | 0 |
| | Shorthorn Genetic Engineering 1985-5, Ltd. | 12/31/85 | 7,462,320 | 1,389,232 | 0 |
| | Shorthorn Genetic Engineering 1982-2, Ltd. | 12/31/85 | 0 | 491,350 | 20,000 |
| | Shorthorn Genetic Engineering 1982-4, Ltd. | 12/31/85 | 0 | 588,902 | 34,000 |
| | Shorthorn Genetic Engineering 1982-5, Ltd. | 12/31/85 | 0 | 610,974 | 12,000 |
| 22070-89 | Durham Genetic Engineering 1985-1, Ltd. | 12/31/85 | 5,479,920 | 982,748 | 0 |
| | Durham Genetic Engineering 1985-2, Ltd. | 12/31/85 | 4,389,600 | 847,560 | 0 |
| | Durham Genetic Engineering 1985-3, Ltd. | 12/31/85 | 9,274,800 | 1,422,744 | 0 |
| | Durham Genetic Engineering 1985-4, Ltd. | 12/31/85 | 6,485,280 | 1,107,882 | 0 |
| | Durham Genetic Engineering 1985-5, Ltd. | 12/31/85 | 4,701,120 | 819,308 | 0 |
| 24514-89 | Shorthorn Genetic Engineering 1984-3, Ltd. | 12/31/84 | 5,200,000 | 889,250 | 0 |
| | Shorthorn Genetic Engineering 1984-3, Ltd. | 12/31/85 | 0 | 1,254,722 | |
| | | | 5,200,000 | | |
| 27641-89 | Timeshare Breeding Service 1984-4, Ltd. | 12/31/84 | 5,200,000 | 951,000 | 0 |
| | Timeshare Breeding Service 1984-4, Ltd. | 12/31/85 | 0 | 1,275,290 | 0 |
| 27675-89 | Shorthorn Genetic Engineering 1984-1, Ltd. | 12/31/84 | 5,200,000 | 765,750 | 0 |
| | Shorthorn Genetic Engineering 1984-5, Ltd. | 12/31/84 | 5,200,000 | 765,750 | 0 |
| | Shorthorn Genetic Engineering 1984-1, Ltd. | 12/31/85 | 0 | 1,299,676 | 8,000 |
| | Shorthorn Genetic Engineering 1984-5, Ltd. | 12/31/85 | 0 | 1,105,527 | 8,000 |

APPENDIX

| Docket No. | Partnership | Taxable Year Ending | Investment Tax Credit | Adjustments Ordinary Income | Adjustments Separately Stated Partnership Items |
|---|---|---|---|---|---|
| 28383-89 | Shorthorn Genetic Engineering 1982-3, Ltd. | 12/31/83 | $0 | $1,677,664 | $2,275 |
| | Shorthorn Genetic Engineering 1982-3, Ltd. | 12/31/84 | 0 | 1,278,581 | 22,000 |
| | Shorthorn Genetic Engineering 1983-1, Ltd. | 12/31/84 | 0 | 1,332,207 | 6,000 |
| | Shorthorn Genetic Engineering 1982-3, Ltd. | 12/31/85 | 0 | 657,916 | 30,000 |
| | Shorthorn Genetic Engineering 1983-1, Ltd. | 12/31/85 | 0 | 1,163,251 | 12,000 |
| 28384-89 | Shorthorn Genetic Engineering 1983-1, Ltd. | 12/31/83 | 5,375,500 | 863,839 | 0 |
| 28491-89 | Timeshare Breeding Service 1983-2, Ltd. | 12/31/85 | 0 | 1,474,911 | 18,000 |
| | Timeshare Breeding Service 1983-3, Ltd. | 12/31/85 | 0 | 1,409,266 | 38,000 |
| | Timeshare Breeding Service 1984-1, Ltd. | 12/31/85 | 0 | 1,345,359 | 4,000 |
| | Timeshare Breeding Service 1984-2, Ltd. | 12/31/85 | 0 | 1,372,156 | 6,000 |
| | Timeshare Breeding Service 1984-3, Ltd. | 12/31/85 | 0 | 1,659,972 | 4,000 |
| 28492-89 | Timeshare Breeding Service 1983-2, Ltd. | 12/31/84 | 0 | 1,199,786 | 8,000 |
| | Timeshare Breeding Service 1983-3, Ltd. | 12/31/84 | 0 | 1,081,335 | 22,000 |
| | Timeshare Breeding Service 1984-1, Ltd. | 12/31/84 | 5,200,000 | 827,500 | 0 |
| | Timeshare Breeding Service 1984-2, Ltd. | 12/31/84 | 5,200,000 | 827,500 | 0 |
| | Timeshare Breeding Service 1984-3, Ltd. | 12/31/84 | 5,200,000 | 889,250 | 0 |
| 29260-89 | Shorthorn Genetic Engineering 1983-2, Ltd. | 12/31/84 | 0 | 1,272,528 | 2,000 |
| | Shorthorn Genetic Engineering 1982-1, Ltd. | 12/31/84 | 0 | 1,463,151 | 13,375 |
| | Shorthorn Genetic Engineering 1984-4, Ltd. | 12/31/84 | 5,200,000 | 827,500 | 0 |
| 29295-89 | Shorthorn Genetic Engineering 1983-3, Ltd. | 12/31/85 | 0 | 1,187,892 | 14,000 |
| | Shorthorn Genetic Engineering 1984-2, Ltd. | 12/31/85 | 0 | 1,158,004 | 6,000 |
| | Shorthorn Genetic Engineering 1983-2, Ltd. | 12/31/85 | 0 | 1,244,886 | 6,000 |
| | Shorthorn Genetic Engineering 1982-1, Ltd. | 12/31/85 | 0 | 468,089 | 16,000 |
| | Shorthorn Genetic Engineering 1984-4, Ltd. | 12/31/85 | 0 | 1,059,134 | 4,000 |
| 29854-89 | Shorthorn Genetic Engineering 1983-2, Ltd. | 12/31/83 | 5,573,520 | 794,227 | 0 |
| 29855-89 | Shorthorn Genetic Engineering 1983-3, Ltd. | 12/31/83 | 5,285,200 | 753,141 | 0 |
| 29856-89 | Shorthorn Genetic Engineering 1983-3, Ltd. | 12/31/84 | 0 | 1,105,753 | 0 |
| 30478-89 | Shorthorn Genetic Engineering 1982-1, Ltd. | 12/31/83 | 0 | 1,541,874 | 0 |

APPENDIX

| Docket No. | Partnership | Taxable Year Ending | Investment Tax Credit | Ordinary Income | Separately Stated Partnership Items |
|---|---|---|---|---|---|
| 30479-89 | Timeshare Breeding Service No. 2, Ltd. | 12/31/83 | $4,991,310 | $711,266 | $0 |
| | Timeshare Breeding Service No. 3, Ltd. | 12/31/83 | 5,220,500 | 951,333 | 0 |
| 20224-90 | Shorthorn Genetic Engineering 1982-1, Ltd. | 12/31/86 | 0 | 704,520 | 34,000 |
| | Shorthorn Genetic Engineering 1982-2, Ltd. | 12/31/86 | 0 | 855,815 | 48,000 |
| | Shorthorn Genetic Engineering 1982-3, Ltd. | 12/31/86 | 0 | 592,481 | 46,000 |
| | Shorthorn Genetic Engineering 1982-4, Ltd. | 12/31/86 | 0 | 674,526 | 48,000 |
| | Shorthorn Genetic Engineering 1982-5, Ltd. | 12/31/86 | 0 | 649,845 | 28,000 |
| 21463-90 | Shorthorn Genetic Engineering 1983-1, Ltd. | 12/31/86 | 0 | 1,993,884 | 28,000 |
| | Shorthorn Genetic Engineering 1983-2, Ltd. | 12/31/86 | 0 | 1,851,391 | 30,000 |
| | Shorthorn Genetic Engineering 1983-3, Ltd. | 12/31/86 | 0 | 1,909,028 | 30,000 |
| | Shorthorn Genetic Engineering 1984-1, Ltd. | 12/31/86 | 0 | 1,778,928 | 36,000 |
| | Shorthorn Genetic Engineering 1984-2, Ltd. | 12/31/86 | 0 | 1,759,660 | 32,000 |
| | Shorthorn Genetic Engineering 1984-3, Ltd. | 12/31/86 | 0 | 1,634,580 | 28,000 |
| | Shorthorn Genetic Engineering 1984-4, Ltd. | 12/31/86 | 0 | 1,372,240 | 30,000 |
| | Shorthorn Genetic Engineering 1984-5, Ltd. | 12/31/86 | 0 | 1,741,354 | 28,000 |
| 21954-90 | Shorthorn Genetic Engineering 1985-1, Ltd. | 12/31/86 | 0 | 1,856,560 | 60,000 |
| | Shorthorn Genetic Engineering 1985-2, Ltd. | 12/31/86 | 0 | 1,880,776 | 30,000 |
| | Shorthorn Genetic Engineering 1985-3, Ltd. | 12/31/86 | 0 | 1,832,344 | 42,000 |
| | Shorthorn Genetic Engineering 1985-4, Ltd. | 12/31/86 | 0 | 1,777,639 | 30,000 |
| | Shorthorn Genetic Engineering 1985-5, Ltd. | 12/31/86 | 0 | 2,110,828 | 42,000 |
| 23531-90 | Durham Genetic Engineering 1983-2, Ltd. | 12/31/86 | 0 | 1,392,420 | 84,000 |
| | Durham Genetic Engineering 1983-3, Ltd. | 12/31/86 | 0 | 2,005,892 | 34,000 |
| | Durham Genetic Engineering 1984-1, Ltd. | 12/31/86 | 0 | 1,515,518 | 66,000 |
| | Durham Genetic Engineering 1984-2, Ltd. | 12/31/86 | 0 | 1,917,100 | 48,000 |
| | Durham Genetic Engineering 1984-3, Ltd. | 12/31/86 | 0 | 1,275,376 | 44,000 |
| | Durham Genetic Engineering 1984-4, Ltd. | 12/31/86 | 0 | 1,570,744 | 14,000 |
| 28577-90 | Durham Genetic Engineering 1985-1, Ltd. | 12/31/86 | 0 | 1,749,607 | 40,000 |
| | Durham Genetic Engineering 1985-2, Ltd. | 12/31/86 | 0 | 1,465,068 | 28,000 |
| | Durham Genetic Engineering 1985-3, Ltd. | 12/31/86 | 0 | 2,860,513 | 56,000 |
| | Durham Genetic Engineering 1985-4, Ltd. | 12/31/86 | 0 | 1,773,822 | 40,000 |
| | Durham Genetic Engineering 1985-5, Ltd. | 12/31/86 | 0 | 1,503,411 | 26,000 |